Patsy Ann STANFORD, et vir., Appellants,

v.

DAIRY QUEEN PRODUCTS OF TEXAS, et al., Appellees.

No. 13323.

Court of Appeals of Texas, Austin.

Nov. 4, 1981.

Rehearing Denied Nov. 25, 1981.

H. Glenn Cortez, Austin, for appellants.

John E. Skogland, Jr., McGown & McClanahan, San Antonio, for appellees.

POWERS, Justice.

Appellants Patsy Ann Stanford and Vernon Glen Stanford, husband and wife and plaintiffs below, appeal an order of the 200th Judicial District Court of Travis County, which sustained the plea of privilege of appellee Dairy Queen Products of Texas, a partnership. Appellants reside in

Travis County. Appellee's principal place of business is in Bexar County. We affirm the order of the trial court.

Appellants brought four causes of action against three defendants, one of whom was appellee.[1] The causes of action were founded upon Mrs. Stanford's illness and the aggravation of her pre-existing heart condition, both alleged to have been caused by an unwholesome cheeseburger purchased and eaten by her at a "Dairy Queen" restaurant in the City of Burnet, Burnet County, Texas.

Appellee possesses exclusive authority in the State of Texas over use of the registered trade name "Dairy Queen." Its business consists in authorizing others to use the name, in the operation of their restaurants in the State, and in maintaining the value of the trade name. In the present case, appellee was shown to have contracted with Mr. Mahoney, a co-defendant in the trial court, allowing him to use the trade name in his operation of the Burnet restaurant. Appellants rely upon this contract, and the conduct of restaurant operations under it, to establish one or more exceptions to the general venue rule.

One may infer from appellants' controverting affidavit that they assert as exceptions to the general venue rule the provisions of Subdivisions 23, 29a and 31 of Tex. Rev.Civ.Stat.Ann. art. 1995, § 23, 29a (Vernon 1964); § 31 (Vernon Supp.1980). Subdivisions 23 and 31 permit venue to be maintained in the county of the plaintiff's residence when: (1) the suit is against an association having an agency or representative in that county; or (2) the suit brings an action for breach of warranty against a manufacturer of consumer goods. Subdivision 29a authorizes venue to be maintained in a county against a co-defendant when he is a necessary party to an action against another defendant and venue is shown to be proper in that county, as to that other defendant, under some other subdivision of article 1995.[2]

At the hearing on appellee's plea of privilege appellants offered documentary and testimonial evidence in support of their contentions under subdivisions 23, 29a and 31. Appellee offered no evidence but chose to rely upon the insufficiency of the evidence adduced by appellants. After the hearing the trial court, sustaining appellee's plea of privilege, severed and transferred the actions against appellee to Bexar County. Though not required to do so, the trial court filed findings of fact and conclusions of law pursuant to Tex.R.Civ.P. 296, 385.

Among the findings of fact were three to the effect that appellants failed to prove by a preponderance of the evidence that appellee "had any agency or representative in Travis County;" that appellee "was a necessary party" to an action against a co-defendant; and that appellee "was a manufacturer of consumer goods or that it had breached any warranties."[3]

1. Appellants' theories of action are: (a) defendants breached a "(w)arranty of fitness of consumer good [sic] manufactured by the Defendants;" (b) defendants were strictly liable for their sale of defective food; (c) defendants were negligent "in the dispensing of food, resulting in (the) sale of tainted food;" and (d) defendants were liable under Tex.Bus. & Com. Code Ann. §§ 17.46, 17.50 (Vernon Supp.1980–1981). Appellants seek joint and several judgments against the following defendants: I. B. Chapman, II, a Tarrant County resident who owned the land and building housing the "Dairy Queen" restaurant; Robert Mahoney, a Harris County resident who leased the property from Mr. Chapman and who owned and operated the restaurant; and, appellee Dairy Queen Products of Texas. Appellants' first amended original petition contains admissions of the residences of Mr. Chapman and Mr. Mahoney and the partnership character and principal place of business of Dairy Queen Products of Texas. Of the three defendants, only appellee interposed a plea of privilege.

2. We refer, of course, only to those parts of the three subdivisions of article 1995 as are applicable to the present lawsuit. All further references to the "venue statute" are to article 1995.

3. The trial court made additional findings of fact pertaining to the causes of action alleged by appellants, namely: that Mrs. Stanford became ill after eating the sandwich sold at a "Dairy Queen" restaurant in Burnet, Texas, following which she consulted a physician and was hospitalized, having ultimately to undergo heart surgery, all of which was "allegedly

Appellants bring to this Court several points of error in their challenge of the trial court's findings of fact. These points may be grouped, as they are briefed, under the three subdivisions of article 1995 relied upon by appellants. We summarize the points as follows:

*Subdivision 23.* The undisputed admissible evidence establishes conclusively that appellee is an association having an agency or representative in Travis County; or, the trial court's finding to the contrary is against the great weight of the admissible evidence.

*Subdivision 29a.* The pleadings and proof conclusively establish that appellee was a necessary party; or the trial court's finding to the contrary is against the great weight of the evidence.

*Subdivision 31.* The undisputed evidence conclusively establishes that under its licensing agreement with the restaurant owner appellee was a "manufacturer" of consumer goods within the meaning of subdivision 31; or, the trial court's finding to the contrary is against the great weight of the evidence.

■ We have treated appellants' "great weight" points as complaints that the trial court's findings are so against the great weight and preponderance of the evidence as to be wrong and unjust. Accordingly, we have reviewed, considered and weighed all the evidence adduced at the hearing on appellee's plea of privilege, including any that is contrary to the trial court's findings of fact and its order sustaining the plea of privilege. *Traylor v. Goulding,* 497 S.W.2d 944 (Tex.1973). We point out that it was appellants' burden to establish by a preponderance of the evidence all the applicable

elements of at least one subdivision of article 1995 if venue was to be maintained in Travis County. Moreover, where substantial and probative evidence supports the trial court's findings of fact, the findings are controlling and we may not disturb them even though there is conflicting evidence, a preponderance of the evidence to the contrary, or even though we might have reached a different conclusion based upon the same evidence. *Commercial Union Assurance Co. v. Foster,* 379 S.W.2d 320 (Tex. 1964). With these rules of appellate review in mind, we will examine appellants' points of error.

### SUBDIVISION 23

■ Partnerships, such as appellee, have been held to be "associations" within the meaning of subdivision 23. *Hudgens v. Bain Equipment and Tube Sales, Inc.,* 459 S.W.2d 873 (Tex.Civ.App.—Corpus Christi 1970, no writ). Assuming the correctness of that holding, subdivision 23 still requires that appellants establish by a preponderance of the evidence that appellee has an "agency" or a "representative" in Travis County before venue may be maintained there. The word "agency," as used in this subdivision, "refers to a situation in which the business of the defendant is, in more or less regular and permanent form, actually conducted in the county of suit. . . ." *Milligan v. Southern Express, Inc.,* 151 Tex. 315, 250 S.W.2d 194 (1952). The word "representative" refers to a situation "in which a party possessing broad powers from the defendant resides in the county. . . ." *Id.*

■ The status of agency is one of ultimate fact derived from underlying facts and may be found from either direct or

caused by eating the cheeseburger;" that appellee was at all material times a partnership "whose residence (sic) is in Bexar County, Texas" and whose business is "that of a franchisor which provides the name Dairy Queen to restaurants throughout the State of Texas;" that appellee "employed two field inspectors to examine the physical appearance of Dairy Queen restaurants throughout the State of Texas," neither of whom "conducted any business operations for or on behalf of (appellee) in Travis County," nor did either possess any actual or

apparent authority to do so, with the result that appellee had no agency or representative in Travis County; and that "none of the licensees of (appellee) conducted any business operations for or on behalf of (appellee)," nor did they possess any actual or apparent authority to do so. The trial court made no finding of fact with respect to whether appellants had established a cause of action in the sense of showing a duty, breach of duty, causation and damages.

circumstantial evidence. *Foundation Reserve Insurance Co. v. Wesson*, 447 S.W.2d 436 (Tex.Civ.App.—Dallas 1969, writ ref'd). Apart from the doctrine of estoppel, the relation of agency is a consensual relation between two persons, whereby one of them is obliged to act for and in behalf of the other and subject to his control. Both elements, that is, acting for and in behalf of another person *and* acting subject to that person's control, are essential to the agency relationship and the absence of one will prevent the conclusion that an agency relationship exists. For example, an independent contractor may act for and in behalf of another, but since he is not under that other person's control, the relation of agency does not exist. *English v. Dhane*, 156 Tex. 231, 294 S.W.2d 709 (1956); *Bertrand v. Mutual Motor Co.*, 38 S.W.2d 417 (Tex.Civ.App.—Eastland 1931, writ ref'd). The status of an independent contractor and that of an agent are not always easy to distinguish. Where, as we believe is the case here, a contract contains provisions which, if they stood alone, would indicate that the relation was that of independent contracting parties and other provisions which would indicate that the relation was that of principal and agent, the spirit and essence of the contract, considered as a whole, must be examined in order to determine whether it involves a retention by the alleged principal of the power to impose his will upon the alleged agent in accomplishing the purposes and objects of the contract. If not, the contract does not create an agency relationship. *Carruth v. Valley Ready-Mix Concrete Co.*, 221 S.W.2d 584 (Tex.Civ.App.—Eastland 1949, writ ref'd).

Appellee's business may fairly be summarized as that of licensing for profit the use of its trade name and maintaining the value of the trade name in the market place. Appellants did not attempt to show that appellee had delegated "broad powers" to any specific individual or legal entity with respect to the operation of *appellee's* business in Travis County; nor did appellants attempt to show that *appellee's* business was, in more or less regular form, actually conducted in Travis County through an agency. *Milligan v. Southern Express, Inc., supra.* Rather, appellants attempted to expand the definition of appellee's "business" to include therein the actual operation of "Dairy Queen" restaurants under the contract in question, on a theory that appellee maintained a degree of control over the operation of each restaurant sufficient to make an individual franchise holder, including any in Travis County, either an "agency" or a "representative" of appellee, thereby imputing to appellee any liability arising from operation of the restaurant (discussed *infra*) and simultaneously satisfying the requirements of subdivision 23 as to "agency" or "representative."

A copy of the contract between appellee and Mr. Mahoney, under which the Burnet County restaurant is operated, was introduced in evidence. The managing partner of appellee admitted that this contract was by and large typical of all such contracts. While the managing partner admitted the existence of three "Dairy Queen" restaurants in Travis County, neither the owner or owners nor their residences were identified in the evidence and there was scant evidence, if any, directed specifically at their manner of operation. Several other documents were authenticated by the managing partner and introduced in evidence, namely: a copy of an inspection checklist utilized by appellee; a paper listing the amount of appellee's annual advertising expenditures for several recent years; a sign printed and furnished by appellee for placement in "Dairy Queen" restaurants warning against the overcooking of "burgers;" and a similar sign advising, "Our Hamburgers are 100% Beef."

The contract describes appellee as "the sole and exclusive owner of the franchise for the State of Texas for the use therein of the registered trade name 'Dairy Queen'...." The other contracting party is described as the 'licensee,' who agrees to "operate a business or businesses in (a prescribed) territory under the trade name 'Dairy Queen.'" He agrees, in addition, to pay the prescribed consideration, consisting of a franchise fee and a "royalty" equal to

two percent of his gross sales, and to abide by specified operational procedures and standards. With respect to restaurant employees, the contract provides that the "licensee" shall "hire and supervise operators and employees for the operation of each such business, set their wages and commissions and pay all such wages and commissions due them, with no liability therefore [sic] on the part of" appellee. Appellee's managing partner testified that each operator is free to obtain his meat from any source and with respect to operational matters in general, each operator "has his own standards;" that no operator is assisted in his advertising by appellee on "a one-to-one basis;" and that the contract requirement that each operator spend a specified percentage of his sales on advertising is not enforced because it is "unworkable" due to the fact that "so many stores ... do not cooperate." It may reasonably be concluded that each of the contract requirements relative to restaurant operations are rather directly related to calculating and verifying the amount of "royalty" payable to appellee or to maintaining the value of appellee's trade name.

In support of their contention under this subdivision, appellants point out that the typical contract between appellee and local "licensee's" imposes upon the latter specified standards and methods of operation; assigns appellee certain inspection rights; and contains other provisions that govern in great detail the "licensees" manner of operation and conduct under the contract. Appellants also point to evidence outside the contract which shows that appellee makes regular contributions to a trade association (Texas Dairy Queen Association) of which most "licensees" are members; that some operators do in fact make contributions as well to such association as they are required to do under the contract; and that this association provides certain employee-training and promotional services which further the business interests of all "Dairy Queen" restaurants, whether their owners are members or not, to the ultimate benefit of appellee's royalty income.[4]

The undisputed evidence established that the restaurants submit to periodic inspections by appellee's two employees, one a Dallas County resident, the other's residence not being shown in the record; employees must wear white uniforms as the contract requires; financial records must be kept in a prescribed manner as the contract requires; some of the contracts require that the licensee must spend one or two percent of its gross sales for advertising and must join the trade association (other evidence shows that these provisions are not enforced because they are "unworkable"); certain employment and supervisory practices must be followed as the contract requires; a suitable building must house the restaurant, for which appellee furnishes the blueprints; and approved sanitation and food-preparation procedures are specified by the contract and other documents printed by appellee and furnished to the restaurants. Compliance with the contract terms, however, is usually sought only when a competing "Dairy Queen" restaurant complains about his competitor's methods or standards of operation.

The undisputed evidence also shows that appellee sometimes makes advertising expenditures of its own in behalf of all "Dairy Queen" restaurants and sometimes contributes to the advertising efforts of groups of "Dairy Queen" restaurants in a specific locality such as Houston or Dallas where there are numerous "Dairy Queen" restaurants; that appellee had never sued a restaurant owner seeking enforcement, cancellation of such a contract or damages for its breach; and that appellee relies instead upon moral suasion to accomplish what amounts to a varying degree of conformance with most contract terms among the various operators.

■ The issue before us, with respect to Subdivision 23, is whether substantial and

---

4. Appellee receives under the typical contract a "royalty" equal to two percent of a "licensee's" gross sales, "less state and local sales taxes."

probative evidence is shown in the evidence, from which the trial court could properly conclude that appellants failed to establish by a preponderance of the evidence that appellee had an agency or representative in Travis County. We see no intrinsic reason why the relationship of "agency" or "representative" could not arise in the franchise context. After reviewing all the evidence, however, we conclude that the trial court could find, based upon substantial and probative evidence, that appellants did not establish that appellee had an agency or representative in Travis County.

As mentioned above, we believe the Mahoney contract, admitted by appellee to be a typical such contract, contains provisions which, if standing alone, would indicate the existence of *either* relationship, principal-agent or independent contractors. Focusing on those provisions which indicate the relation of principal-agent in a similar contract, one court labelled "excessive" the degree of control reserved by the licensor. The court held, nevertheless, that whether a principal-agent relationship existed was a question of fact properly left to the trier of fact based upon all the evidence. *Singleton v. International Dairy Queen, Inc.*, 332 A.2d 160 (Del.1975). *See also* Annot. 81 A.L.R.3d 764.

In the present case, we believe that the spirit and essence of the contract, considered as a whole, does not reserve in appellee the power to impose his will upon the licensee in accomplishing the purposes and objects of the contract; moreover, under all the evidence the trier of fact (the trial court alone in this case) could legitimately find as it did based upon the proposition that neither party to the contract acted for or in behalf of the other. With respect to appellee, the manifest purpose and object of the contract was to exploit for profit its ownership of the exclusive right to license others to use the trade name "Dairy Queen," while simultaneously preserving the value of the name in the market place. With respect to a licensee under such a contract, the manifest purpose and object of the contract was to obtain the right to use the trade name because of its

market value, which the licensee had in a business decision determined to be worth the consideration demanded, namely: the franchise fee, the two-percent "royalty," and a promise to abide by those contract provisions which appellee considered necessary and exacted to maintain the value of the trade name. We believe that the numerous contract provisions dealing with an alleged retention of excessive control by appellee must be read in this light. The parties simply had *different* purposes and objects.

We hold that the evidence does not conclusively establish the relation of "agency" or "representative." Neither is the finding of the trial court, with respect to "agency" and "representative" so against the great weight and preponderance of the evidence as to be wrong and unjust. Specifically, the record includes substantial and probative evidence from which the trial court could conclude that the typical restaurant operator did not *act for* appellee and *in its behalf*; that the operator did not possess broad powers to do so; and from which the trial court could find that appellee did not retain *excessive control* over the restaurant operation so as to accomplish appellee's purpose and object under the contract.

Moreover, we hold that the trial court could hold as it did because appellants failed to prove, by a preponderance of the evidence, and with particular reference to Travis County, that the alleged agent or representative (the restaurant operator) performed his duties for appellee in *that* county. In this connection the evidence established only that a similar contract or contracts were in force with respect to "Dairy Queen" restaurants in Travis County and that a named individual was appellee's inspector and inspected the Travis County restaurants. The trial court was thus left to determine primarily from the contract terms *alone* whether an agency or representative existed in Travis County, quite apart from any evidence relative to typical and actual operations elsewhere. Nevertheless, if we assume that the Travis County restaurant operations were typical,

we must uphold the trial court's findings because sufficient evidence is in the record to support them.

On the other hand, there certainly exists in the record evidence from which the trial court *could* have concluded that appellants *had* established by a preponderance of the evidence that a principal-agent relation existed under the typical contract and mode of operation. We point specifically to the evidence that the layout and construction of the restaurant buildings are controlled by appellee; that appellee provides training films; that appellee routinely inspects the restaurants to assure compliance with the contract; that it requires the use of a uniform bookkeeping system; that while compliance with the franchise contract is variable among the various restaurants, appellee does seek total compliance as a "goal" and could, though it has not done so, resort to the courts to cancel or enforce the contract or obtain damages for its breach; that appellee urges compliance with the various contract provisions, the degree of exhortation depending upon how directly related the provision is to the matters of royalty and trade name dilution; that advertising placards are furnished to the restaurants by appellee, who assists as well in obtaining from "Dairy Queen International" certain television tapes and newspaper advertisements; and that appellee encourages restaurant operators not to sell incompatible articles such as beer. Nevertheless, because substantial and probative evidence does support the trial court's finding to the contrary, we may not disturb its findings with respect to "agency" and "representative."

In their discussion of Subdivision 23, appellants complain that the trial court erroneously excluded evidence tending to show that appellee paid to the Texas Dairy Queen Association the sums mentioned above. Such evidence does not, in our view, tend to establish the pertinent facts from which one may conclude that appellee had an agency or representative in Travis County and any error, if one exists, is harmless. Nevertheless, we have considered and weighed such evidence in measuring the trial court's findings of fact. We need not,

therefore, rule on the question of its admissibility.

### SUBDIVISION 29a

The pertinent issue under Subdivision 29a is whether, under the pleadings and the evidence, it was shown that appellee was a "necessary party" to appellants' suit against either of the other two defendants, Mr. Chapman or Mr. Mahoney, neither of which is a resident of Travis County but as to one of which venue may properly be maintained in Travis County under *another* venue exception set out in article 1995. At the hearing, appellants concentrated upon the element of "necessary party" and ignored, as they did in their brief here, the equally-essential element of Subdivision 29a which requires that they show that a Travis County venue is proper as to one of the other defendants under some subdivision of article 1995 apart from Subdivision 29a. Appellants simply directed no evidence to this point.

In *Pioneer Building & Loan Ass'n v. Gray*, 132 Tex. 509, 125 S.W.2d 284 (1939), the Supreme Court of Texas gave the following interpretation of Subdivision 29a:

> It is one which is never considered alone, but always in connection with some other exception of article 1995. This is true for the reason that it deals only with suits brought outside the county of the domicile of any defendant, but which are maintainable where brought against one defendant under some other exception of that statute. Another exception must be applicable before the question of whether subdivision 29a is applicable is reached.

 Because there is no evidence or allegation that venue in Travis County is proper under another subdivision as to either of appellee's two co-defendants, appellants failed as a matter of law to establish the essential elements of Subdivision 29a. Appellee's right to insist upon an establishment of *another* subdivision of article 1995 is unaffected by the failure of appellee's co-defendants to assert their statutory privilege to be sued in the county of their residence. *Harwood v. Hunt*, 473 S.W.2d

287 (Tex.Civ.App.—Beaumont 1971, no writ); 1 R. McDonald, Texas Civil Practice § 4.36 (1981). This interpretation is consistent with the plain meaning, literal wording and evident purpose of Subdivision 29a. Because we hold that appellants failed to establish by a preponderance of the evidence this essential element of subdivision 29a, we need not consider whether the trial court's finding that appellee was not a "necessary party," within the meaning of the subdivision, is contrary to the undisputed evidence or so against the great weight and preponderance of the evidence as to be wrong and unjust.

### SUBDIVISION 31

Subdivision 31 provides:

31. Breach of warranty by a manufacturer.—Suits for breach of warranty by a manufacturer of consumer goods may be brought in any county where the cause of action or a part thereof accrued, or in any county where such manufacturer may have an agency or representative, or in the county in which the principal office of such company may be situated, or in the county where the plaintiff or plaintiff resides.

We have validated the trial court's finding that appellee was not shown by a preponderance of the evidence to have an agency or representative in Travis County. The record establishes as a matter of law that appellants reside in Travis County, that appellee's principal place of business is situated in Bexar County, and that appellants' actions include a suit for breach of warranty with respect to an article which may reasonably be included within the category of "consumer goods." We are left then with the issue of whether the trial court's finding that appellee was not a "manufacturer" of the cheeseburger, within the meaning of the subdivision, is contrary to the undisputed evidence or so against the great weight or preponderance of the evidence as to be wrong and unjust.

5. The section provides:
"§ 400. Vendor Selling as Own Product Chattel Made by Another.

To support its contention that appellee is such a "manufacturer," appellant urges the following: (1) appellee is shown by the evidence to have "used its franchises as an extension of itself," a reference to the control allegedly exercised by appellee over the licensed operators by means of the typical contract; (2) one who "puts out" as his own product an article manufactured by another, is "subject to the same liability as though he were the manufacturer" of it; and (3) under RESTATEMENT (SECOND) OF TORTS § 400, (1965),[5] appellee is "liable as the franchisor to the same extent as if it were the manufacturer," for if appellee is not held so liable, "the sound principal (sic) enumerated in § 400 will be subverted."

The record establishes as a matter of law that a restaurant employee in the Burnet, Texas "Dairy Queen" was the literal "manufacturer" of the sandwich in the sense of actually assembling the various ingredients of the sandwich, processing them and preparing the sandwich from its various ingredients. Moreover, appellee was not the actual "vendor" of the sandwich to which § 400 of the Restatement imputes the actual manufacturer's liability. In this case, the Burnet, Texas restaurant employee or employees were the literal manufacturer and the literal vendor. Reliance upon the Restatement is therefore misplaced.

Appellants argue primarily a theory of vicarious liability which would impute to appellee liability for the tort of the restaurant employee or employees, as such liability might be imputed to Mr. Mahoney under the doctrine of *respondent superior* arising from the employer-employee relationship. Appellants advance such a theory of vicarious liability but do not refer us to it by name or by reference to the applicable legal principles. We are unable to ascertain what it is. It may not be a vicarious liability founded upon the law of agency because we have validated the trial court's finding

"One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer."

that no such agency existed. It may not be a vicarious liability founded upon the relationship of employer-employee because the evidence does not establish by a preponderance of the evidence that appellee employed the employee who actually prepared or sold the sandwich. Indeed, the contract specifically provides that Mr. Mahoney shall engage, pay and supervise the restaurant employees. If appellants intend a vicarious liability founded upon the mere fact that the sandwich was sold under the "Dairy Queen" sign, making appellee liable in a larger but essentially abstract definition of "manufacturer," that theory was rebutted in our view by the introduction of evidence showing the actual contractual relationship between the operator and appellee and by other evidence showing that an employee of the operator actually prepared the sandwich. *John Deere Co. v. Whitley*, 597 S.W.2d 43 (Tex.Civ.App.—Amarillo 1980, writ dism'd).

We hold that substantial probative evidence supports the trial court's finding that appellee was not the "manufacturer" of the sandwich.

The undisputed evidence does not conclusively establish all the essential elements of any of the subdivisions of article 1995 relied upon by appellants, nor do we find any of the trial court's material findings of fact to be so against the great weight and preponderance of the evidence as to be wrong and unjust. Accordingly, because appellants failed to establish by a preponderance of the evidence any of the statutory exceptions to the general venue rule, we must affirm the trial court's order.

PHILLIPS, Chief Justice, dissenting.

I would hold appellants proved by a preponderance of the evidence that appellee had an agency in Travis County.[1] I would have no trouble finding, as a matter of law, that appellees' agency is "a situation in which the business of the defendant is, in more or less regular and permanent form, actually conducted in the county of suit

..." *Milligan v. Southern Express, Inc.*, 151 Tex. 315, 250 S.W.2d 194 (1952).

When persons visit a Dairy Queen restaurant they look to Dairy Queen for a favored recipe, quality control, cleanliness and price. They are not looking to whomsoever is inside, "slinging the hash," for the stand. They are looking to Dairy Queen as the principal.

The following evidence is uncontroverted. The restaurant from which the cheeseburger was purchased operated under a license issued by Dairy Queen Products. Dairy Queen Products is the exclusive licensor for restaurants of the registered trade name "Dairy Queen" in the State of Texas. In return for its grant of a license, Dairy Queen Products receives the right to a percentage of the gross profits—usually two (2%) percent. The license to use the trade name "Dairy Queen" gives Dairy Queen Products the right to make exacting requirements concerning bookkeeping systems, employees, availability of business records of the licensee for inspection by licensor, construction of buildings, and clothing of employees. Dairy Queen Products supervises the operations of the licensees by means of field inspectors who inspect all restaurants within the state. The purpose of such inspections is to insure compliance with the terms of the franchise. Dairy Queen Products spends substantial sums of money for advertising and contributes time, expertise, and money to the Trade Association of its franchisees. Dairy Queen Products' interest in the quality of food and service is portrayed by the food specifications, quality control specifications and health and sanitation rules. Dairy Queen Products participates in advertising with its individual licensees or with groups of them.

Although Dairy Queen Products is in the business of selling the trade name "Dairy Queen," it is also in the business of maintaining the quality of Dairy Queen products that are sold by the local franchises. Additionally, it is in the business of furthering or increasing the business of Dairy Queen

1. Tex.Rev.Civ.Stat.Ann. art. 1995, subdivision 23.

Restaurants, thereby promoting the trade name Dairy Queen and increasing its own profits. This necessitates constant supervision of all Dairy Queen restaurants and an *active participation in their method of operation.*

A person who represents a corporation or association in the promotion of that corporation or association is an agent or representative for the purposes of subsection 23. This is true despite the fact the agent or representative is not employed by or paid by the corporation or association. *Skelly Oil Co. v. Medart*, 488 S.W.2d 175 (Tex.Civ. App.—Waco 1972, no writ); *see also John Deere Co. v. Ramirez*, 503 S.W.2d 382 (Tex. Civ.App.—Amarillo 1973, writ dism'd).

See, also *Singleton v. International Dairy Queen, Inc.*, 332 A.2d 160 (Del.Super.Ct. 1975), where the trial court obviously believed that the Dairy Queen Restaurant was an agent of its franchisor. It is equally obvious the court was of the opinion that the facts should be further developed in Dairy Queen's unsuccessful attempt to extricate itself from the day-to-day business of the franchisee, by way of summary judgment.

The uncontroverted facts set out above clearly show a Dairy Queen restaurant was located in Travis County and that it was an agent or representative of Dairy Queen Products. The trial court erred in sustaining appellees' plea of privilege.

It is not necessary, despite appellees contention, that an agent or representative under subsection 23 be able to contractually bind the defendant. *Delhi Gas Pipeline Corp. v. Lamb*, 610 S.W.2d 210 (Tex.Civ. App.—El Paso 1980, writ dism'd); *Mid-Continent Life Insurance Co. v. Huston*, 481 S.W.2d 943 (Tex.Civ.App.—Houston [1st Dist.] 1972, writ ref'd n. r. e.); *Cotton Concentration Co. v. A. Lassberg & Co.*, 433 S.W.2d 736 (Tex.Civ.App.—Eastland 1968, no writ); Guittard & Tyler, Revision of the Texas Venue Statute: A Reform Long Overdue, 32 Baylor L.Rev. 563 (1980).

I would reverse the judgment of the trial court and render judgment that venue to the suit be maintained in Travis County.