# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00265-CV

**James Cuffee, Appellant**

**v.**

**CBL/Richland Mall, LP d/b/a Richland Mall, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT
### NO. 205,461-C, HONORABLE GORDON G. ADAMS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

James Cuffee filed a premises liability suit to recover for injuries he sustained after falling on a stairway in a mall owned by CBL/Richland Mall, L.P. ("CBL"). The case was tried before a jury, which entered a verdict in favor of CBL. In a single issue on appeal, Cuffee complains that the trial court erred in excluding hearsay testimony that Cuffee contends was an admission by a party-opponent concerning the dangerous condition of the stairs where Cuffee was injured. Because we conclude that the declarant was not a party-opponent and that the statement was properly excluded as inadmissible hearsay, we will affirm the judgment.

## BACKGROUND

At the time of his accident, Cuffee was employed as a security guard by the facilities-services company, ERMC II, L.P. ("ERMC"), and was on patrol at the Richland Mall in Waco, Texas. During his evening shift at the mall on July 31, 2002, Cuffee fell as he began to

descend a staircase. According to Cuffee's trial testimony, he approached the staircase, bypassing a "wet floor" sign in the hallway,[1] and took a step down with his right foot when he felt himself falling. He testified that he reached out for the handrail, but "there wasn't any for some reason," and then fell down the steps, injuring his right knee.

Cuffee stated that he could not recall whether he fell forward or to his side and that he was not sure exactly what caused him to fall. When shown photographs of the stairway taken at some point after his accident, Cuffee agreed that the pictures showed a handrail on the right-hand wall and black safety treads at the top of the steps. He maintained, however, that at the time of his accident, there were no such treads on the stairs, which were instead covered in grooves or "etchings" that were a "pinkish color." With regard to the handrail, Cuffee alternately testified that there was no handrail in place on the night of his accident, that he could not remember whether there was a handrail, and that, when he did reach out for the handrail, he reached to his left-hand side (where, according to the photographs in evidence, no handrail is installed).

Cuffee's daughter, Eva Johnson, also testified. She stated that when she heard about her father's accident, she drove to the Richland Mall and then followed the ambulance to the hospital. Johnson testified that while she was at the hospital, she spoke with Cuffee's supervisor, William Gilmore. Gilmore, also an ERMC employee, was the security officer who conducted the accident investigation after Cuffee's fall. However, the trial court sustained CBL's objections to any further testimony from Johnson regarding her conversation with Gilmore on the basis that it was

_____

[1] Cuffee testified, however, that there was no water or any other substance on the floor when he fell. He also stated that he did not trip over anything on either the stair or the floor.

inadmissible hearsay. In response, Cuffee made an offer of proof that Johnson would have testified that Gilmore told her "that the steps were dangerous and that the reason for it was because of the grooving or etching on the steps, and that [Gilmore] had almost slipped there himself on one occasion."[2]

CBL's only witness was Kandice Menning, a CBL employee and the general manager of the Richland Mall. Menning testified that ERMC is the "security, housekeeping and maintenance contractor for the shopping center," and that Gilmore and Cuffee are both employees of ERMC. According to Menning, CBL has a "specific written contract" with ERMC to perform these services, with a "contracted fee" that is adjusted on an annual basis.[3] She further testified that ERMC does not report to her company for "routine day-to-day operational issues," but that ERMC does submit a "monthly inspection report" on matters related to the condition of the facilities and any investigations that it performs. When asked whether CBL dictates any particular accident-investigation techniques to ERMC, Menning stated, "We rely on ERMC." Menning also stated that she did not know if ERMC differentiates between accidents involving tenants and those involving customers of the shopping center when it conducts accident investigations.

The jury returned a unanimous verdict finding that Cuffee's injuries were not the result of CBL's negligence, and the trial court entered final judgment in favor of CBL. Cuffee's motion for new trial was denied, and this appeal followed.

---

[2] The parties have stipulated that this offer of proof was sufficient to preserve Cuffee's complaint on appeal that Johnson's testimony was improperly excluded.

[3] A copy of the contract was not offered into evidence, however.

**STANDARD OF REVIEW**

We review a trial court's ruling to admit or exclude evidence for abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005); *Goodson v. Castellanos*, 214 S.W.3d 741, 754 (Tex. App.—Austin 2007, pet. denied). A trial court abuses its discretion if it acts without reference to any guiding rules and principles or if the act complained of is arbitrary and unreasonable. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002). We must uphold a trial court's evidentiary ruling if there is any legitimate basis in the record to support it. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). We will not reverse a trial court for an erroneous evidentiary ruling unless the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1; *see also Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989). A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753-54 (Tex. 1995).

**DISCUSSION**

Cuffee asserts on appeal that William Gilmore's statements to Eva Johnson at the hospital on the night of Cuffee's accident were admissions by a party-opponent under rule 801(e)(2)(D) of the Texas Rules of Evidence. Rule 801(e)(2)(D) excludes from the definition of hearsay statements by the party's agent or servant made during the relationship concerning a matter within the scope of the agency or employment. Tex. R. Evid. 801(e)(2)(D). Cuffee maintains that although Gilmore was employed by ERMC, he was acting as an agent of CBL and his presence at

4

the hospital was in furtherance of his agency. In support of his argument, Cuffee points to evidence that ERMC was under contract with CBL to perform security and maintenance services and that Gilmore, a security officer, prepared ERMC's accident report, an action that was done for CBL's benefit. Cuffee asserts that Gilmore's statements were within the scope of his agency because "part of ERMC's authorization" from CBL was to generate and transmit investigative reports concerning the condition of the premises, "including any dangerous conditions." Moreover, argues Cuffee, Gilmore was "still investigating" the incident when he spoke to Johnson at the hospital, and therefore any statements Gilmore made to her about the dangerousness of the stairs at the mall were within the scope of his agency. CBL counters that Gilmore was not an agent but an independent contractor, and thus none of his statements can be attributed to CBL.

It is undisputed that Gilmore is employed by ERMC, not CBL. Therefore, in order to admit Gilmore's statements as admissions by CBL, Cuffee must first establish that an agency relationship existed between Gilmore and CBL. *See Texas Gen. Indem. Co. v. Scott*, 253 S.W.2d 651, 655-56 (1952) (fact of agency must be established before declarations can be admitted); *Moore v. Office of Atty. Gen.*, 820 S.W.2d 874, 877 (Tex. App.—Austin 1991, no writ) (party asserting agency relationship has burden of proving its existence). To be an agent, a person must (1) act for and on behalf of another person and (2) be subject to that person's control. *Stanford v. Dairy Queen Prods.*, 623 S.W.2d 797, 801 (Tex. App.—Austin 1981, writ ref'd n.r.e.). Both elements are required; "the absence of one will prevent the conclusion that an agency relationship exists." *Id.*; *see also Daily Int'l Sales Corp. v. Eastman Whipstock, Inc.*, 662 S.W.2d 60, 64 (Tex. App.—Houston [1st Dist.] 1983, no writ) (person is not agent or servant unless subject

5

to another party's control); Restatement (Second) of Agency § 1 cmt. e (1958) ("'Agent' is a word used to describe a person authorized by another to act on his account and under his control.").

An independent contractor, on the other hand, may act for and on behalf of another, but since he is not under that other person's control, the relation of agency does not exist. *English v. Dhane*, 294 S.W.2d 709, 711 (Tex. 1956) (citing *Bertrand v. Mutual Motor Co.*, 38 S.W.2d 417 (Tex. Civ. App.—Eastland 1931, writ ref'd)); *Stanford*, 623 S.W.2d at 801. It is the extent of control over the details of accomplishing the assigned task that distinguishes the relationship of an agent and principal from that of an independent contractor and owner. *Happy Indus. Corp. v. American Specialties, Inc.*, 983 S.W.2d 844, 852 (Tex. App.—Corpus Christi 1998, pet. dism'd w.o.j.); *Lyons v. Lindsey Morden Claims Mgmt.*, 985 S.W.2d 86, 91 (Tex. App.—El Paso 1998, no pet.); *McDuff v. Chambers*, 895 S.W.2d 492, 497 (Tex. App.—Waco 1995, writ denied). Absent proof of control, there is no agency. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 542 (Tex. 2002) ("The right of control is the 'supreme test' for whether a master-servant relationship, rather than an independent contractor relationship, exists."); *Webster v. Lipsey*, 787 S.W.2d 631, 635 (Tex. App.—Houston [14th Dist.] 1990, writ denied) ("essential element of proof of agency" is that alleged principal has right to assign agent's task and to control means and details of process).

Thus, to determine whether Gilmore is an agent of CBL, we must consider whether CBL had the right to control the progress, details, and methods of operations of Gilmore's work. *See Limestone Prods. Dist., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002); *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 585-90 (Tex. 1964). The employer must control not merely the end sought to be accomplished, but also the means of its accomplishment as well.

6

*Thompson v. Travelers Indem. Co.*, 789 S.W.2d 277, 278 (Tex. 1990); *Travelers Ins. Co. v. Ray*, 262 S.W.2d 801, 803 (Tex. Civ. App.—Eastland 1953, writ ref'd). Right of control is measured by such factors as the worker's discretion over when and where to begin and stop work, the independent nature of the worker's business, the amount of time spent on particular aspects of the work, the worker's obligation to furnish the tools and appliances necessary to perform the work, and the physical method or manner of accomplishing the end result. *See Pitchfork Land & Cattle Co. v. King*, 346 S.W.2d 598, 603 (Tex. 1961); *Farrell v. Greater Houston Transp. Co.*, 908 S.W.2d 1, 3 (Tex. App.—Houston [1st Dist.] 1995, writ denied); *see also Thompson*, 789 S.W.2d at 279; *United States Fid. & Guar. Co. v. Goodson*, 568 S.W.2d 443, 447 (Tex. Civ. App.—Texarkana 1978, writ ref'd n.r.e.).

In applying the agency test to the facts of this case, we conclude that Gilmore was not an agent of CBL and that Gilmore's statements cannot be attributed to CBL as admissions. As discussed above, Cuffee needed to establish that Gilmore was acting on CBL's behalf *and* that CBL had the right to control the details of Gilmore's work. *See Stanford*, 623 S.W.2d at 801. Assuming arguendo that the first prong of the test has been met, Cuffee has cited no evidence that CBL exerted any control over the manner and methods by which he performed security work, nor have we found any such evidence from our independent review of the record.

On the contrary, the record before us supports the conclusion that ERMC and its security officers were merely independent contractors. As Menning testified, ERMC employees do not report to CBL concerning routine, "day-to-day operational issues," and CBL does

7

not dictate any particular accident-investigation techniques to ERMC. Instead, Menning testified, CBL "rel[ies] on ERMC."[4]

We also note that the contract between CBL and ERMC was not admitted into evidence, nor did any witnesses besides Menning testify concerning the nature or the terms of the parties' agreement with respect to security and accident investigations. Thus, we can find no support in the record for Cuffee's claim that the generation and transmission of accident-investigation reports "was part of ERMC's authorization from Richland Mall and was included in the agency agreement." Cuffee failed to carry his burden and establish as a threshold matter that an agency relationship existed between CBL and Gilmore. We therefore hold that the trial court did not abuse its discretion in excluding Johnson's testimony regarding Gilmore's hearsay statements.

## CONCLUSION

Because the trial court did not err in excluding Johnson's testimony on the basis that it was inadmissible hearsay, we overrule Cuffee's sole issue and affirm the judgment.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: July 17, 2008

_____

[4] Menning's testimony further suggests that CBL is not even aware of how ERMC conducts its accident and security investigations, let alone that CBL dictates the procedures and methods that ERMC must use. For example, she stated that although she is the general manager of the Richland Mall, she was unaware whether ERMC has the same accident-reporting procedures for incidents involving tenants and those involving shopping mall customers.

8