

# IN THE
# TENTH COURT OF APPEALS

No. 10-16-00272-CV

**WG&D MASONRY, LLC,**

**Appellant**

**v.**

**LONG ISLAND'S FINEST HOMES, LLC,**

**Appellee**

**From the 40th District Court**
**Ellis County, Texas**
**Trial Court No. 92757**

## MEMORANDUM OPINION

WG&D Masonry, LLC, a Texas company, sued Long Island's finest Homes, LLC, a New York company, in Texas for breach of contract and other causes of action in connection with two leases of short term rental homes in New York and the subsequent withholding of the security deposit for the first lease. Long Island filed a special appearance. After both parties responded multiple times, attaching affidavits and supporting documents, the trial court held a hearing and granted Long Island's special

appearance and dismissed WG&D's lawsuit against Long Island. Because the trial court did not err in granting the special appearance, we affirm the trial court's judgment.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Initially, WG&D complains on appeal that the trial court erred in failing to file findings of fact and conclusions of law when timely requested and timely notified they were past due. *See* TEX. R. CIV. P. 296, 297. As a remedy, WG&D contends we should either abate the appeal for findings of fact and conclusions of law or reverse the trial court's order dismissing WG&D's lawsuit for lack of personal jurisdiction.

Appeals of orders on special appearances are most commonly brought as appeals of interlocutory orders, and findings of fact and conclusions of law are not required in that procedural posture. *See* TEX. R. APP. P. 28.1(c); TEX. CIV. PRAC. & REM. CODE ANN. §51.014(a)(7) (West 2014). Notwithstanding that, the order on Long Island's special appearance in this case is coupled with a dismissal of WG&D's claims which makes it a final judgment. However, WG&D is still not entitled to findings of fact and conclusions of law. *See* TEX. R. CIV. P. 296. "The purpose of Rule 296 is to give a party a right to findings of fact and conclusions of law finally adjudicated after a conventional trial on the merits before the court." *Ikb Indus. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997). Where there is no conventional trial on the merits, findings and conclusions may be proper, but a party is not entitled to them. *See id*. (findings and conclusions in dismissal of suit as discovery sanction, helpful but not required). In this case, there was no

conventional trial on the merits.  Thus, WG&D was not entitled to findings of fact and conclusions of law, and the trial court did not err in not providing them.[1]  WG&D's first issue is overruled.

**SPECIAL APPEARANCE**

In its second and third issues, WG&D asserts that because Barry Turk was Long Island's agent (second issue) and because Long Island's contacts through Turk established personal jurisdiction (third issue), the trial court erred in granting Long Island's special appearance.

Pursuant to Rule 120a of the Texas Rules of Civil Procedure, a special appearance may be made by any party for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such person or property is not amenable to process issued by the courts of this State.  TEX. R. CIV. P. 120a(1). Whether a court has jurisdiction is a question of law that we review de novo. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013).  "When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence." *Id.*

---

[1] WG&D claims that without findings of fact and conclusions of law, it is left to speculate as to the grounds of the trial court's order.  In a special appearance, the trial court's sole determination is whether it has jurisdiction over a particular party.  Further, when the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013).  Thus, WG&D is still able to present its appeal without findings of fact and conclusions of law.  If the trial court had erred in failing to file them, any error would be harmless.

Texas courts have personal jurisdiction over a nonresident defendant when (1) the Texas long-arm statute provides for it, and (2) the exercise of jurisdiction is consistent with federal and state due process guarantees. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). The Texas long-arm statute's broad doing-business language "allows the statute to reach as far as the federal constitutional requirements of due process will allow." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). Under a constitutional due-process analysis, personal jurisdiction exists when (1) the non-resident defendant has established minimum contacts with the forum state, and (2) the assertion of jurisdiction complies with "traditional notions of fair play and substantial justice." *Moki Mac*, 221 S.W.3d at 575 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). We focus on the defendant's activities and expectations when deciding whether it is proper to call the defendant before a Texas court. *Int'l Shoe Co.*, 326 U.S. at 316.

A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). WG&D alleges that the trial court had both specific and general jurisdiction. A court has specific jurisdiction over a defendant if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010); *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996). In such cases, "we focus

on the 'relationship among the defendant, the forum[,] and the litigation.'" *Spir Star AG*, 310 S.W.3d at 873 (quoting *Moki Mac*, 221 S.W.3d at 575-76). General jurisdiction is present when a defendant's contacts with a forum are "continuous and systematic," a more demanding minimum-contacts analysis than specific jurisdiction. *Id*. at 807. For general jurisdiction purposes, we do not view each contact in isolation. *Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 809 (Tex. 2002).

The plaintiff bears "the initial burden of pleading allegations sufficient to confer jurisdiction," and the burden then shifts to the defendant "to negate all potential bases for personal jurisdiction the plaintiff pled." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). A defendant can negate jurisdiction either legally or factually. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). Legally, the defendant can show that the plaintiff's alleged jurisdictional facts, even if true, do not meet the personal jurisdiction requirements. *See id*. Factually, the defendant can present evidence that negates one or more of the requirements, controverting the plaintiff's contrary allegations. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 fn. 4 (Tex. 2016). The plaintiff can then respond with evidence supporting the allegations; and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. *Id*. If the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute, the defendant need only prove that it does not live in Texas to negate jurisdiction. *Kelly*, 301 S.W.3d. at 558-559. If the parties present conflicting evidence that raises a fact

issue, we will resolve the dispute by upholding the trial court's determination. *See Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009); *see also BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex. 2002).

*Agent*

We must first decide whether Turk was Long Island's agent. Because there are no findings of fact and conclusions of law, the trial court impliedly found Turk was not Long Island's agent. To be an agent, a person must (1) act for and on behalf of another person and (2) be subject to that person's control. *Stanford v. Dairy Queen Prods.*, 623 S.W.2d 797, 801 (Tex. App.—Austin 1981, writ ref'd n.r.e.). Both elements are required; "the absence of one will prevent the conclusion that an agency relationship exists." *Id.* An independent contractor, on the other hand, may act for and in behalf of another; but since he is not under the other's control, an agency relationship does not exist. *Bertrand v. Mut. Motor Co.*, 38 S.W.2d 417, 418 (Tex. Civ. App.—Eastland 1931, writ ref'd). Accord *Stanford*, 623 S.W.2d at 801. Thus, absent proof of control, there is no agency. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 542 (Tex. 2002) ("The right of control is the 'supreme test' for whether a master-servant relationship, rather than an independent contractor relationship, exists."); *Webster v. Lipsey*, 787 S.W.2d 631, 635 (Tex. App.—Houston [14th Dist.] 1990, writ denied) ("essential element of proof of agency" is that alleged principal has right to assign agent's task and to control means and details of process).

WG&D contends that Turk was Long Island's agent because he was listed on Long

Island's website as a member of its "team," and when Wendy Hernandez, the majority owner and member-manager of WG&D, contacted Long Island through its website, Turk replied to her through an email associated with Long Island.[2]  However, in its amended special appearance, Long Island asserted by affidavit of Jonas J. Wagner, its president, that Turk was an independent contractor, not Long Island's agent.  There is no evidence in the record to show that Long Island had any control over Turk.  Long Island's name was not on any of the leases entered into by WG&D, payments of rents and security deposits were not wired to Long Island's bank account, and Turk admitted he withheld WG&D's security deposit, not Long Island.  Thus, there is nothing in the record to establish that Turk was Long Island's agent.  Accordingly, the trial court did not err in impliedly finding that Turk was not Long Island's agent, and we overrule WG&D's second issue.

*Personal Jurisdiction*

We now look to whether Long Island, itself, not through the actions of Turk, purposely availed itself of the privileges of doing business in Texas so as to subject itself to personal jurisdiction in Texas.

WG&D sued Long Island for breach of contract, bad faith retention of security deposit, civil theft, conversion, and unjust enrichment/quantum meruit, each stemming from the same series of transactions allegedly with Long Island.  WG&D alleged that

---

[2] The remaining emails from Turk were through an "AOL" address, not Long Island's address.

Long Island engaged in the business of offering short-term leases of homes in or around Long Island, New York to Texas residents and solicited Texas residents, like WG&D to lease homes in New York. Specifically, WG&D alleged that it entered into a lease agreement with Long Island for a home in New York which was performed in whole or in part in Texas; that Long Island negotiated the terms of the lease in Texas via telephone, electronic mail, and/or fax and presented the final draft of the lease to WG&D by fax for signature in Texas; and that WG&D wired its security deposit, "realtor fee," and monthly rental payments from Texas to Long Island in accordance with the lease. WG&D claimed that at the conclusion of the lease, Long Island communicated with WG&D via telephone, electronic mail, and/or fax regarding the return of the security deposit and that Long Island failed and wrongfully refused to return the deposit.

Long Island filed a special appearance asserting that the trial court did not have jurisdiction over Long Island because Long Island was not a Texas company, did not maintain an office or branch in Texas or have any employees in Texas; did not own or lease any property in Texas, did not solicit business in Texas, did not purposefully direct its activities toward Texas, was not amendable to process issued by a Texas court, and has not done any act or consummated any transaction in Texas that would allow the court to exercise personal jurisdiction over it. It further asserted that any contacts by Long Island with the State of Texas were random, isolated and fortuitous.

In response, WG&D filed an affidavit of Wendy Hernandez who stated that based

on the recommendation of a Texas company which had previously leased from Long Island,[3] WG&D called "Barry Turk of Long Island's Finest Homes," to inquire about property to rent in New York. Hernandez asserted she received proposed leases from Turk, ultimately negotiated a lease with Turk, wired money to Long Island, and signed a lease and faxed it back to Turk. Hernandez attached copies of the leases, the fax cover sheets, letters from Turk, and the wire transfers. Long Island's letterhead appears on the fax cover sheets and letters from Turk which accompanied the leases. The leases themselves made no mention of Long Island. The wire transfers, appearing to be filled out by WG&D, indicated that some of the money was sent to a bank account under Turk's name and Long Island's name.

Hernandez also asserted in her affidavit that she and Turk exchanged emails regarding issues with the rented property, renting different property, wiring more money, and the return of the security deposit. However, the documents attached to the affidavit indicate that the emails from Turk originated from an AOL account, not from an account associated with Long Island. Further the lease signed by WG&D did not include any letterhead or fax coversheet from Long Island. Also, the wire transfers did not consistently indicate to whom the money was sent. Some of the wire transfer documents which used a Chase Bank account ending in "30" indicated the money was sent to Barry Turk or to Turk and Long Island while some indicated the money was sent to a different

---

[3] No documentation of this transaction was included with the affidavit.

Chase Bank account number and a different person, Lindon Morrison. Hernandez did not explain whether or not Morrison had any connection to Long Island.[4]

WG&D's response prompted Long Island to file a first amended special appearance in which Long Island contended neither general nor specific jurisdiction existed. In support of this contention, Long Island attached the affidavit of Jonas J. Wagner, Long Island's president. In his affidavit, Wagner stated Barry Turk was a real estate broker who occasionally performed work on an independent contract-basis for Long Island until his contract was terminated on June 5, 2015. He also stated Long Island was unaware of the contacts between WG&D and Turk until after Long Island was sued and never authorized Turk to use Long Island's name, or anything else in connection with any contract, agreement, communication or document by or between WG&D and Turk. Wagner confirmed that the email address used in email communications between Turk and WG&D was not Long Island's email address.

Wagner further asserted that Long Island never entered into a business relationship, contract, or agreement with WG&D, never received money from WG&D, and never solicited business from WG&D in Texas. Wagner confirmed that the bank account number on the documented wire transfers "has never been" Long Island's bank account. He then reasserted that Long Island: 1) never solicited any business in Texas; 2) never conducted business in Texas; 3) had no office in Texas; 4) owned no property in

---

[4] The documents attached to Hernandez's affidavit indicate Morrison was the landlord for the second lease signed by WG&D.

Texas; 5) had no registered agent for service of process in Texas; 6) had no employees in Texas; 7) never advertised in Texas; 8) did not visit Texas in connection with the lease of any property to WG&D; and 9) had not visited Texas in connection with the lease of any other property.

Not to be outdone, WG&D responded to the amended special appearance and attached another affidavit from Hernandez. In that affidavit, and contrary to her initial affidavit, Hernandez stated that, based on the recommendation of the company mentioned in her previous affidavit, Hernandez visited Long Island's website and visited the "Meet our Team" page. She attached a copy of that page as it purportedly appeared in April of 2015. Turk is listed on that page. Hernandez stated that after visiting the page, she filled out information on a "Contact Us" page on Long Island's website. Attached to the affidavit is a copy of that page as it purportedly appeared in April of 2015. Hernandez asserted that after she filled out the "contact us" information, Turk responded to her though an email account associated with Long Island. Hernandez responded to Turk at the same email address. Copies of those emails are attached to the affidavit. A copy of Turk's Long Island business card allegedly given to Hernandez by Turk is also attached.

Lastly, Long Island supplemented its first amended special appearance with an unsworn declaration by Turk. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 132.001 (West 2011) ("(a) … an unsworn declaration may be used in lieu of a written sworn declaration…or affidavit…."). Turk stated that Chase Bank account ending in "30" was

his bank account and was not an account affiliated with Long Island. He also stated that Suey Tan was the real estate broker and Turk was the real estate agent in connection with the first lease to WG&D and that Tan and Turk shared the realtor fee in connection with the lease. Turk affirmed that he held the security deposit for the lease and transferred the security deposit to another lease by WG&D, but that when WG&D held over on that second lease, Turk withheld the entire security deposit as damages.

*Application*

From the evidence described above, the contacts which WG&D asserts establish the trial court's jurisdiction over Long Island were either to or from Turk. We have already held that Turk was not Long Island's agent. Based on the evidence presented, Long Island conducted no activity within and had no continuous and systemic contacts with Texas. Thus, the trial court does not have specific or general jurisdiction over Long Island. Further, since WG&D failed to plead facts bringing Long Island within reach of the long-arm statute, to negate jurisdiction, Long Island needed only to prove, and did so, that it does not "live" in Texas. Accordingly, the trial court did not err in granting Long Island's special appearance, and WG&D's third issue is overruled.

**CONCLUSION**

Having overruled each issue on appeal, the trial court's judgment is affirmed.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed June 7, 2017
[CV06]

