ARTHUR ENGLISH V. O. B. DHANE ET AL.

No. A-5735. Decided October 31, 1956.
(294 S.W. 2d Series 709)

*M. Hendricks Brown* and *Chas. J. Murray,* of Fort Worth, for petitioners.

*Mock, Richie & Spell,* of Wichita Falls, for respondents.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

This cause is a consolidation of three suits filed by Dhane et al., respondents, against Arthur English, petitioner, and John J. Peters, for damages for personal injuries sustained by them in a collision of the automobile in which they were riding and one owned by English but driven by Peters. The trial court rendered judgment for respondents on a jury verdict. Only English appealed. The Court of Civil Appeals affirmed. 286 S.W. 2d. 666.

The controlling question here is whether Peters was the agent of English in driving the latter's car at the time of the collision. It is thus stated in Point No. 1, which is the one on which the application was granted:

"The Court of Civil Appeals erred in holding that petitioner English, who had loaned his automobile to a third party and had requested the return of the same, was responsible for the negligent manner in which the gratuitous bailee was operating the car while returning it."

Both Peters and English were quartered in the same barracks and attached to the same outfit at Sheppard Air Force Base, near Wichita Falls. English owned an automobile and was very generous in lending it free to his associates at the Air Force Base for their own use. In the early evening of February 9, 1955, English loaned the car to Peters for the latter to use in keeping a date with a young lady. About 8:00 P.M.

Peters drove the car to the Non-commissioned Officers Club on the Base, where he met the young lady and they danced until about 10:30. Meanwhile English, who was on patrol duty in Wichita Falls, got a date for himself for later on that night when he would be relieved from duty, and he wanted his car for that engagement. While Peters was still at the club, English returned to the Base and left a note in the car requesting Peters to call him. Soon Peters returned to the barracks and to change clothes. Finding the note, he drove the car off the Base and to a drive-in cafe between the Base and Wichita Falls, known as Pioneer No. 3. He had arranged to reunite with his date there. From that point Peters called English, who told him to bring his car to the Wichita Falls police station between 12:00 and 1:00 o'clock and "pick him up." English said this procedure got the car from the Base to the station without his having to go back to get it. While Peters was on his way to Wichita Falls in response to English's request the accident happened.

The jury found that Peters was an agent of English in driving the car from Pioneer Cafe to the police station and was acting in the course of his agency.

The application for writ of error assigns four Points. We have already quoted the first. The other three Points complain in some way of the failure of the trial court to include in his definition of agency the essential element of control, but our conclusion on the first Point renders it unnecessary to decide them.

■ The record is wholly void of any evidence that English had claimed or exercised any control over Peters in the latter's operation of the car at the time in question, and in that situation there can be no agency. Bertrand et al. v. Mutual Motor Co., Texas Civ. App., 38 S.W. 2d 417, error refused. "While an agent is frequently a bailee, generally in cases of bailment the agency relation does not exist as the bailor generally has no control over the bailee and is not responsible to others for his acts." 2 C.J.S., Agency, Eec. 2b, p. 1027.

■ It has been said that the very essence of a contract of bailment is that after its purpose has been fulfilled the bailed property shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it, as the case may be. 8 C.J.S., Bailments, Sec. 1a, p. 222.

Here it is the contention of respondents that bailee's effort

to redeliver the automobile to English, as the bailment obliged him to do, gave control of bailee to English, and thereby changed their relationship of bailor and bailee to one of master and servant.

Peter's undisputed testimony was that on many occasions previous to the one involved here he had borrowed English's car; that on these occasions he returned the car to "wherever he told me to bring it back to him," and "that would depend on whether or not he, himself, had a date later on that night." He added that he was on the way to take it to English at the latter's request, which request had been delivered to him but "a few minutes before."

Therefore, if it can be said that there was any control exercised by English over Peters it was only to do that thing which the law required him to do and what the practice between the two was: to return the borrowed car to such place as English wanted it returned. This was no control such as a master has and exercises over his servant.

It follows that both judgments below, in so far only as they relate to English, are reversed, and judgment is here rendered for petitioner English.

Opinion delivered October 31, 1956.