Joe ANDREWS, Sr., Appellant,

v.

Ronny Ray ALLEN, et al., Appellees.

No. 14551.

Court of Appeals of Texas, Austin.

Jan. 28, 1987.

Rehearing Denied March 11, 1987.

---

David E. Chamberlain, Austin, for appellant.

James Rindfuss, San Antonio, for appellee.

Before SHANNON, C.J., and EARL W. SMITH and GAMMAGE, JJ.

GAMMAGE, Justice.

This is an appeal from a take-nothing judgment rendered by the district court against Joe Andrews, Sr., plaintiff, and Frontier Insurance Company, intervenor, and in favor of defendants, Ronny Ray Allen, Oak Hills Ranch, and Harold Stone. We will affirm the judgment.

Prior to March 16, 1983, Andrews delivered his quarter horse mare named "I'll Call Ya" to Oak Hills Ranch and its owner Harold Dean Stone (hereinafter collectively referred to as "Stone"), appellees, for the purposes of boarding and stabling. Stone and Oak Hills Ranch were in the business of brokering, stabling and training racehorses for profit. Several months later, Andrews asked Stone if he would arrange for "I'll Call Ya" to be transported to a trainer in Louisiana. Consequently, when Ronny Allen and his brother Billy Allen delivered two horses to Oak Hills Ranch, Stone asked them if they would haul "I'll Call Ya" back to their training stables at Silsbee, in east Texas, where the Louisiana trainer could pick her up. Andrews apparently agreed to these plans even though he did not know the Allen brothers. Ronny Allen, Billy Allen and a third brother, Ernie Allen, are co-owners of the Allen Brothers Racing Stables, also in the business of boarding and training horses for profit. Stone had previously done business with the Allen brothers.

On March 16, 1983, Ronny and Billy Allen loaded "I'll Call Ya" into their trailer and began the drive back to Silsbee. Shortly after leaving Oak Hills Ranch, the trailer became disengaged from the Allens' truck, rolled over at least once and came to rest on the side of the road. The mare was severely cut and bruised as a result of the accident and apparently lingered for several hours on the side of the road before she died without veterinary treatment.

The trial court found, and it is not disputed before this Court, that the fair market value of the horse immediately before the accident was $150,000, and the fair market value of the horse after the accident was $0.

## GRATUITOUS BAILMENT VS. BAILMENT FOR MUTUAL BENEFIT

Andrews brings thirteen points of error. In his first two points of error, he alleges that the trial court erred in finding that Stone and Allen were gratuitous bailees. He argues that a mutual bailment has been established as a matter of law, or in the alternative, that the court's finding of a gratuitous bailment is against the great weight and preponderance of the evidence.

Appellees argue that the court correctly found that Stone and Allen were gratuitous bailees because they received no consideration for their services, but were merely doing "favors" for friends in the horse business—in essence, that Stone was doing a favor for Andrews, and Allen was doing a favor for Stone. We disagree.

 It is true that neither Stone nor Allen received any money from Andrews, although it is disputed whether they originally intended to charge Andrews for their services. The presence or absence of monetary compensation, however, is not dispositive of the issue before us. The test is whether the bailment was made as an incident of a business in which the bailee makes a profit.

[T]he rule is *that a bailment is for the mutual benefit of the bailor and the bailee, although nothing is paid directly by the bailor, where the property of the bailor is delivered by the bailor, and accepted by the bailee, as an incident of a business in which the bailee makes a profit.* In such situation the bailee receives his compensation in the profits of the business in which the bailment is an incident. Therefore a business institution, which, within the scope of its business accepts and receives a bailor's property, even though no charge is made, is with respect to such property

more than a mere gratuitous bailee, and should be held to the responsibilities of a bailee for mutual benefit, inasmuch as such services attract patronage. (emphasis in original)

*Bill Bell, Inc. v. Ramsey*, 284 S.W.2d 244, 248 (Tex.Civ.App.1955, no writ). In *Bill Bell*, the plaintiff bailor left his boat, engine and trailer with the defendant bailee for repairs. Defendant told plaintiff that repairs would cost about $100.00. Plaintiff responded that the price was too high, whereupon the defendant suggested that the manufacturer might fix the motor without charge under its manufacturer's warranty, and he volunteered to check with the manufacturer about it. The boat, motor and trailer were subsequently stolen from the defendant's lot. The trial court held that a bailment for mutual benefit had been established as a matter of law even though the plaintiff had never promised to pay anything to the defendant. The Court of Civil Appeals affirmed.

Bailments for mutual benefit have, under similar circumstances, consistently been found as a matter of law where there was no charge for the service. *Citizens' National Bank v. Ratcliff & Lanier*, 253 S.W. 253 (Tex.Comm.App.1923, jdgmt adopted) (bank lost bonds it had promised to sell for customer without charge); *Berlow v. Sheraton Dallas Corp.*, 629 S.W.2d 818 (Tex. App.1982, writ ref'd n.r.e.) (hotel lost a former guest's package it was keeping for free); *Sanroc Company International v. Roadrunner Transportation, Inc.*, 596 S.W.2d 320 (Tex.Civ.App.1980, no writ) (bailee held liable for damage to bailor's trailer even though the bailee did not charge for storage of the trailer); *Wilson v. Hooser*, 573 S.W.2d 601 (Tex.Civ.App. 1978, writ ref'd n.r.e.) (bailee held liable even though bailor admitted he did not expect to pay the car dealer anything for selling his consigned automobile); *Shamrock Hilton Hotel v. Caranas*, 488 S.W.2d 151 (Tex.Civ.App.1972, writ ref'd n.r.e.) (hotel restaurant held liable for losing a purse left under a dining room table by plaintiff); and *Hastings v. Thweatt*, 425 S.W.2d 661 (Tex.Civ.App.1968, no writ) (defendant bailee held liable for damage to airplane he had borrowed from plaintiff for the purpose of trying it out to determine whether he wanted to buy it).

█ It is undisputed that both Stone and Allen accepted delivery of "I'll Call Ya" and that both are in the business of handling horses for a profit. Both Stone and Allen testified that they typically do these "favors" for one another because it is good for business. Under the reasoning in *Bill Bell*, they each received, as consideration for the bailment, good will of others in the business and the general profits of the business to which the bailment was incident.

Furthermore, there is evidence that Andrews was keeping one of Stone's horses in return for Stone's "favor" of keeping "I'll Call Ya" and that Stone was also doing a "favor" for Allen by trying to find a buyer for one of Allen's horses. There clearly was consideration to support both the bailment from Andrews to Stone and the bailment from Stone to Allen. Therefore, we sustain Andrews' first point of error and hold that Stone and Allen were bailees for mutual benefit as a matter of law. Because we decide this issue as a matter of law, we need not address Andrews' second point of error concerning sufficiency of the evidence.

## PRESUMPTION OF NEGLIGENCE

Having entered into a bailment for mutual benefit, each bailee became liable for its ordinary negligence. In his points of error three, four, five and six, Andrews alleges the trial court erred in finding that the accident was unavoidable and in not finding that the appellees had failed to rebut the presumption of negligence and thus were negligent as a matter of law. We disagree.

█ In a bailment for mutual benefit, a rebuttable presumption of negligence arises upon proof that the bailed chattel was destroyed or not returned. To overcome this presumption, the bailee has the burden of showing the cause of the accident or that the damage resulted from some other cause consistent with due care on his part. *Buchanan v. Byrd*, 519

S.W.2d 841, 844 (Tex.1975); *Trammell v. Whitlock*, 150 Tex. 500, 242 S.W.2d 157, 160 (1951). *See, Comments, Presumptions and the Burden of Proving a Bailee's Negligence: Sufficiency of Proof to Rebut a Bailor's Prima Facie Case*, 31 Tex.L.Rev. 46 (1952).

The Texas Supreme Court has stated on two occasions that this presumption is "based on the just and common sense view that the party in possession or control of an article is more likely to know and more properly charged with explaining the damage to it or disappearance of it than the bailor who entrusted it to his care." *Buchanan v. Byrd, supra*, at 843; citing *Trammell v. Whitlock, supra* at 159. The Texas Supreme Court further stated:

> A mere showing by the bailee of lack of knowledge how the loss occurred is not sufficient. The general rule is that in order to rebut the presumption of his negligence, the defaulting bailee must show how the loss occurred and that it was due to some other cause than his own neglect or negligence *or* that, however the loss occurred, it was not due to his negligence. (emphasis added)

*Buchanan v. Byrd, supra* at 844. Failure to adequately rebut the presumption of negligence establishes liability as a matter of law. *Shamrock v. Caranas, supra* at 153.

Evidence concerning the cause of the accident is circumstantial and heavily contested. Allen claims he was driving at a safe speed when an eighteen-wheel truck, coming in the opposite direction, passed him creating a gust of wind that hit the trailer in which the horse was being hauled. Immediately following the gust of wind, according to Allen, the horse began to "pitch a fit," shifting her weight in such a way as to cause the trailer to become disengaged from the truck.

A review of the evidence as a whole, however, indicates that Allen's explanation is merely a hypothesis and that he doesn't really know what caused the trailer hitch to become disengaged. He felt the trailer jerk before it came loose, and he assumes the horse sat back in the trailer. He does not know for a fact what the horse actually did, if anything, or why. Even if the horse was frightened by a passing truck, appellee does not explain why that would cause a properly secured hitch to become disengaged. To the contrary, appellees admitted that they do not know why the hitch failed. Both Ronny and Billy Allen testified further that movement by the horse in the trailer should not have caused the trailer to come loose. There was additional testimony to this effect.

In short, Allen's explanation that the horse "pitch[ed] a fit" in the trailer simply does not explain why the trailer hitch failed. As stated above, a mere showing by the bailee of lack of knowledge how the loss occurred is insufficient to rebut the presumption of negligence. Allen has failed to show "how the loss occurred and that it was due to some other cause than his own neglect or negligence." *Buchanan, supra* at 844. This is, however, only the first half of the *Buchanan* test. Allen can also rebut the presumption of negligence by showing that "however the loss occurred, it was not due to his negligence."

The Allen brothers testified that Billy Allen led the horse into the trailer with the help of one of Stone's employees; that Billy Allen properly secured the horse's head at the front of the trailer; that the Allen brothers used all other equipment that a reasonably prudent person would use to secure and haul the horse; that Billy Allen checked the tires and made sure the trailer hitch was properly secured; that the ball was the proper size and in good condition; that the ball was used without incident to haul other trailers after the accident; that Ronny Allen was driving at a safe speed and in a safe manner immediately before the accident; that after the accident the sleeve of the trailer hitch was still in the secured position; and that they made a reasonable effort to obtain veterinary treatment for the horse after the accident.

█ We find the above testimony sufficient under the second half of the *Buchanan* test to rebut the presumption of negligence as a matter of law. Because appellees produced evidence that they exercised

ordinary care at every step of the venture, showing that no matter how the accident occurred it was not due to their negligence, they satisfied their burden of production under *Buchanan* thereby denying plaintiff the right to judgment as a matter of law on the issue of negligence. We therefore overrule Andrews' third, fourth, fifth and sixth points of error.

## SUFFICIENCY OF THE EVIDENCE

Andrews argues by his twelfth and thirteenth points of error that the trial court's findings concerning the cause of the accident and the degree of care exercised by Allen in securing, transporting and obtaining medical care for the horse are against the great weight and preponderance of the evidence.

The trial court's findings of fact have the same force and dignity as a jury verdict. If supported by some competent evidence, they will not be disturbed on appeal, even though they may appear to be against the preponderance of the evidence, unless they are so against the overwhelming weight of the evidence as to be clearly and manifestly wrong. *Nelson v. Jordan*, 663 S.W.2d 82, 86 (Tex.App.1983, writ ref'd n.r.e.); *Greater Beauxart Garden Municipal Utility District v. Cormier*, 596 S.W.2d 597, 600 (Tex.Civ.App.1980, no writ). A court of appeals may not pass upon the credibility of the witnesses or substitute its findings for those made by the trial judge, nor may it substitute its judgment for that of the trier of fact even though, after reviewing the evidence, it may have reached a different conclusion. *In the Interest of J.J.R.*, 669 S.W.2d 840, 843 (Tex.App.1984, writ dism'd); *Ryan v. Morgan Spear Associates, Inc.*, 546 S.W.2d 678, 685 (Tex.Civ. App.1977, writ ref'd n.r.e.).

■ We have reviewed the evidence as a whole and are unable to say, despite evidence to the contrary, that the trial court's findings and conclusions that Allen was not negligent and that the accident was unavoidable are so against the overwhelming weight of the evidence as to be clearly wrong. For this reason, we overrule An-

drews' twelfth and thirteenth points of error.

## LIABILITY OF ORIGINAL BAILEE (STONE)

By his remaining points of error, Andrews argues that Stone and Oak Hills Ranch are liable for the loss of "I'll Call Ya" under various theories including agency, bailment and negligent entrustment. We find no merit to these arguments and overrule them for the following reasons:

### (A) Agency Theory

■ Stone is not liable for the acts of Allen under an agency theory for two reasons. First, since Allen has not been held liable, there is nothing for which to hold his alleged principal liable. Second, there is no agency relationship between Stone and Allen.

The evidence clearly is both legally and factually sufficient to support the trial court's finding of fact that Stone "had no control over Ronny Ray Allen or the method and manner of the operation of his truck and trailer in hauling the quarter horse mare ...". The trial court was therefore correct in concluding as a matter of law that Allen was not acting as an agent of Stone. *Vahlsing Christina Corp. v. Ryman Well Service, Inc.*, 512 S.W.2d 803, 812 (Tex.Civ.App.1974, writ ref'd n.r.e.); *First National Bank v. Farmers & Merchants State Bank*, 417 S.W.2d 317, 330 (Tex.Civ.App.1967, writ ref'd n.r.e.). There also is no evidence to support appellant's vaguely-stated contention that Allen acted as a servant, employee, representative, joint venturer or principal of Stone.

### (B) Bailment Theory

■ Allen's relationship to Stone was that of subsequent bailee. A bailment relationship is distinguished from an agency relationship by the fact that a bailor has no control over the bailee and is not responsible to others for his acts. *English v. Dhane*, 156 Tex. 231, 294 S.W.2d 709 (1956).

Stone is not liable to Andrews for the acts of Allen under a bailment theory because Stone fulfilled the terms of his bailment contract with Andrews upon delivery of "I'll Call Ya" in good condition to Allen. The trial court made the following finding of fact which is supported by the great weight of the evidence:

> On or about March 16, 1983, Joe Andrews, Sr., directed Harold D. Stone and Oak Hills Ranch to deliver the quarter horse mare to Ronny Ray Allen in order that Ronny Ray Allen could haul the mare from the Oak Hills Ranch in Blanco, Texas, to Silsbee, Texas, for delivery to Steve Van Beber.

There is uncontroverted testimony that Stone gave the horse to Allen at the behest and with approval of Andrews. The fact that Andrews did not know Allen personally at the time does not, as appellant urges, undermine this finding. The trial court also found, and it is not disputed, that "I'll Call Ya" was in good condition at the time she was delivered to Allen. Delivery to a third person at the direction of the bailor constitutes an excuse relieving the bailee of liability for subsequent loss or nondelivery of the bailed property. *Crow Contracting Corp. v. George F. Smith Co.*, 407 S.W.2d 593 (Mo.Ct.App.1966); *Stearns v. Farrand*, 60 N.Y.S. 501, 29 Misc. 292 (N.Y.Sup.Ct. 1899); 8 C.J.S. Bailments § 37, p. 462 (1962); 8 Am.Jur.2d Bailments § 180, p. 910 (1980). *See also, English v. Dhane, supra.*

### (C) Negligent Entrustment Theory

Andrews argues in the alternative that Stone negligently entrusted the mare to Allen and that the trial court's conclusion of law and the implied finding in support thereof that Stone and Oak Hills Ranch were not negligent are against the great weight and preponderance of the evidence.

Andrews bases this argument on the fact that Stone failed to inquire about Ronny Allen's driving record. The evidence showed that Ronny Allen had had several accidents, at least seven speeding tickets, and that he held only an operator's license and not a commercial or chauffer's license. There is additional evidence, however, that Stone had done business with the Allen brothers for many years and that they had hauled horses for Stone in the past. Because we cannot say that the court's refusal to find negligent entrustment is so contrary to the great weight of the evidence as to be clearly wrong, we must overrule this contention. *Nelson v. Jordan, supra.*

### CROSS-POINT

Ronny Ray Allen alleges by cross-point that Andrews is not entitled to attorney's fees. We need not consider this cross-point, however, because the trial court's judgment did not award attorney's fees to Andrews and Andrews raised no point of error concerning attorney's fees.

The judgment of the trial court is affirmed.

EARL W. SMITH, J., not participating.