

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00226-CV

FRANKIE P. CARTER AND TMC
AUTO TRANSPORT, INC.

APPELLANTS

V.

MIKE FLOWERS

APPELLEE

----------

## FROM COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellee Mike Flowers purchased a 2000 Lincoln Town Car at an auction for the purpose of reselling it at his business, a used car lot in New Mexico. He hired Appellant TMC Auto Transport, Inc., owned by Appellant Frankie P. Carter, to transport the vehicle from an auction in Texas to New Mexico.

---

[1]See Tex. R. App. P. 47.4.

While TMC's trailer was stopped at a red light, a car struck the rear of the trailer, moved up onto the trailer, and hit Flowers's car. The driver of this vehicle was arrested for DWI.

Flowers's car was damaged in the accident. Upon instruction by an adjustor with TMC's insurance carrier, TMC dropped off the vehicle in the parking lot of the auto auction, where the carrier had it picked up by a wrecker. The insurance carrier and Flowers engaged in negotiations over compensation. Flowers rejected the insurance carrier's offers, and at some point the insurance company sold the car at a salvage auction for $1,575.

Flowers filed suit against TMC and Carter for breach of contract and breach of warranty. Flowers later amended his petition to add claims for breach of mutual benefit bailment, conversion, negligence, and breach of duty of good faith and fair dealing.

The trial court denied TMC and Carter's motion for summary judgment, and the case was tried to the bench. Flowers introduced evidence showing that the Bluebook retail value of a 2000 Lincoln Town Car in excellent condition several months after the accident was $13,150. Flowers testified that he did not remember what he paid for the car at the auction but gave a ballpark figure of "a little over $10,000," which he stated was less than retail but a little more than wholesale. Flowers also testified that from the pictures he saw, "[he] knew [the car] was totaled" in the accident, but because he never saw the car after the accident, he could not give an estimate as to its salvage value after the accident.

2

TMC produced evidence that the highest bidder at the salvage auction had bid $1,575.

The trial court rendered judgment for Flowers on his breach of bailment contract claim against TMC and awarded him $10,000 in actual damages and $11,910 in attorney's fees. The court rendered a take nothing judgment on Flowers's claim against Carter and a judgment in favor of TMC on Flowers's remaining claims.

In its first issue, TMC argues that the trial court erred by granting judgment for Flowers on his breach of bailment contract claim in the face of a deemed admission stating that "Defendants did not breach any contract made the basis of this lawsuit." TMC expressly waived this issue during oral argument before this court, and we therefore do not consider it.

In its second issue, TMC argues that the trial court erred by granting judgment for Flowers on his breach of contract claim when TMC's only legal duty was to exercise an ordinary or reasonable degree of care in hauling Flowers's vehicle, and there was no evidence of any negligence on the part of TMC when its trailer was hit from behind by an intoxicated driver.

"The foundation of a bailment lies in contract."[2] A bailment contract may be express or implied.[3] In either case, for a bailment to arise, the bailor must

_____

[2]*Sanroc Co. Int'l v. Roadrunner Transp., Inc.*, 596 S.W.2d 320, 322 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ).

3

deliver personal property to the bailee for a specific purpose, the bailee must accept delivery of the property, and the parties must agree that the specific purpose will be realized and that the property will be either returned to the bailor or dealt with according to the bailor's direction.[4]

The bailment relationship is governed by principles of negligence.[5] That is, the bailment contract gives rise to a duty on the part of the bailee, and, in the case of a bailment for mutual benefit of the parties,[6] that duty is to take reasonable care in safekeeping the property that is the subject matter of the bailment.[7] The bailee has an obligation to return the property to the bailor when

---

[3]*State v. $281,420.00 in U.S. Currency*, 312 S.W.3d 547, 551 (Tex. 2010) (stating that to create a bailment, there must be an express or implied contract between the parties); *see also Int'l Freight Forwarding, Inc. v. Am. Flange*, 993 S.W.2d 262, 268 (Tex. App.—San Antonio 1999, no pet.) (noting that a bailment contract may arise by implication of law).

[4]*See $281,420.00 in U.S. Currency*, 312 S.W.3d at 551.

[5]*Bank One, Tex., N.A. v. Stewart*, 967 S.W.2d 419, 432 (Tex. App.— Houston [14th Dist.] 1998, pet. denied).

[6]*Andrews v. Allen*, 724 S.W.2d 893, 895–96 (Tex. App.—Austin 1987, no writ) (defining a bailment for mutual benefit as one in which the bailment was created as an incident of a business in which the bailee makes a profit).

[7]*Trammell v. Whitlock*, 150 Tex. 500, 504, 242 S.W.2d 157, 159 (1951); *Ampco Auto Parks, Inc. v. Williams*, 517 S.W.2d 401, 403 (Tex. Civ. App.— Dallas 1974, writ ref'd n.r.e.).

the purpose of the bailment has ended or to keep the property until the bailor reclaims it.[8]

The law does not provide a single, specific cause of action for a breach of a bailment contract,[9] and a bailee who breaches the duties arising from the bailment contract may be liable for breach of the contract or for negligence in the performance of his or her duty arising from the contract.[10] In an action based on a bailment for mutual benefit of the parties, once the bailor proves that the property was not returned, a rebuttable presumption arises of negligence by the

---

[8]*English v. Dhane*, 156 Tex. 231, 233, 294 S.W.2d 709, 711 (1956); *Allright Auto Parks, Inc. v. Moore*, 560 S.W.2d 129, 130 (Tex. Civ. App.—San Antonio 1977, writ ref'd n.r.e.); *see also D & D Assocs., Inc. v. Sierra Plastics, Inc.*, 570 S.W.2d 205, 206 (Tex. Civ. App.—Waco 1978, no writ) ("[E]very bailment contract contemplates return of the property bailed, either in the same or altered form, or its delivery to a third person with the express or implied consent of the bailor.").

[9]*W.E. Stephens Mfg. Co. v. Goldberg*, 225 S.W.3d 77, 81 (Tex. App.—El Paso 2005, pet. denied) ("A bailment relationship does not create a specific cause of action but instead allows the bailor to choose specific relief for breach of the bailment contract, e.g., an action for breach of contract, or an action for conversion.").

[10]*Barker v. Eckman*, 213 S.W.3d 306, 310 (Tex. 2006) (noting that claims for breaches of bailment agreements generally can be brought as contract or tort claims); *see also Staley v. Colony Union Gin Co.*, 163 S.W. 381, 382 (Tex. Civ. App.—Amarillo 1914, no writ) (quoting *Davis v. Hurt*, 114 Ala. 146, 152, 21 S. 468, 469 (1897) for the proposition that an unexplained failure to deliver the bailed property raises a presumption of negligence on the part of the bailee and may give rise to liability for breach of the bailment contract or for negligence in the performing the duty that arises from the contract).

bailee in the performance of his duties, establishing a prima facie case of liability against the bailee.[11]

The bailee is generally not liable, however, if the property subject to the bailment has been injured by accident or by some other means that was entirely not the bailee's fault.[12] And when the property is delivered to a third party at the bailor's direction, the bailee has no liability for any subsequent loss or nondelivery of the bailed property.[13]

TMC is correct that it is not liable for breach of the bailment contract based on the damage to the vehicle caused by the drunk driver if TMC's negligence did not allow the accident to occur because, in that case, the damage to the vehicle was not caused by TMC's failure to take reasonable care of the vehicle. And, as Flowers admitted at trial, the accident was caused solely by the drunk driver.

But TMC still had an obligation under the bailment contract to return the property to Flowers, even in its altered state.[14] It failed to do so. TMC could have avoided liability by proving that, through no fault of its own, the vehicle had

---

[11]*Buchanan v. Byrd*, 519 S.W.2d 841, 843 (Tex. 1975); *Sanroc Co. Int'l*, 596 S.W.2d at 322.

[12]*Whitlock v. Trammell*, 237 S.W.2d 451, 453 (Tex. Civ. App.—Fort Worth), *aff'd*, 150 Tex. 500, 242 S.W.2d 157 (1951).

[13]*Andrews*, 724 S.W.2d at 899.

[14]*See Sierra Plastics, Inc.*, 570 S.W.2d at 206.

been damaged to such an extent that it could not be returned.[15] But TMC did not do so. Nor did TMC establish that while in the insurance company's possession, the vehicle was destroyed or disappeared through no fault of TMC or the insurance company.[16] And TMC does not argue that it delivered the vehicle to the insurance company at Flowers's direction or that Flowers's consent to having the property delivered to the insurance company created a subsequent bailment, and therefore TMC cannot escape liability on this basis.[17] Although Carter testified that TMC did not have a wrecker that could move the damaged vehicle, TMC did not establish that it was impossible to move the vehicle—in fact, the evidence established that the vehicle was moved. Carter acknowledged at trial that he did not know what happened to Flowers's vehicle. TMC breached its duty under the bailment contract, not when the drunk driver struck the vehicle, but when it delivered the vehicle to a third party and then lost track of it. We overrule TMC's second issue.

In its third issue, TMC argues that the trial court erred by granting judgment on Flowers's breach of contract claim when TMC conclusively

---

[15]*See Whitlock*, 237 S.W.2d at 453.

[16]*See Barnett-Miron Enters., Inc. v. Roneal Martin, Inc.*, 742 S.W.2d 530, 532 (Tex. App.—Fort Worth 1987, no pet.) (holding that even if the bailee erred by delivering property subject to a bailment to a third party, the bailee was not liable for the property's loss because it had been destroyed by a fire that was not caused by the fault of the bailee or the third party).

[17]*See Andrews*, 724 S.W.2d at 899.

7

established its affirmative defense of impossibility of performance. Impossibility is a defense to a breach of contract action,[18] and bailment contracts are generally governed by the same rules that govern other contracts.[19] We agree with TMC that, due to circumstances beyond its control, it was impossible for TMC to deliver the car to Flowers in the same condition as when TMC took the car into its possession. But TMC did not establish that it was impossible for TMC to deliver the vehicle at all.

In its reply brief, TMC argues that the trial court awarded Flowers the full value of the undamaged vehicle even though it would have been impossible for TMC to deliver to Flowers an undamaged vehicle. A plaintiff usually has the burden of proving every element of his claim, including damages.[20] Flowers offered evidence of the value of the vehicle prior to the accident but did not provide any evidence of the value of the vehicle after it had been damaged in the accident. TMC produced some evidence of the vehicle's value after the accident, but only in the form of the bids at the salvage auction. In a letter to the parties, the trial court stated that TMC was not liable for the damage to the vehicle caused by the accident but that TMC "to some extent, deprived [Flowers] of the

---

[18]*Centex Corp. v. Dalton*, 840 S.W.2d 952, 954 (Tex. 1992) (recognizing impossibility of performance as a defense to a breach of contract action).

[19]*Sanroc Co.*, 596 S.W.2d at 322.

[20]*See Lakewood Pipe of Tex., Inc. v. Conveying Techniques, Inc.*, 814 S.W.2d 553, 556 (Tex. App.—Houston [1st Dist.] 1991, no writ).

8

opportunity to evaluate the loss" by turning the vehicle over to the insurance company "and wash[ing] its hands." The court reiterated this conclusion in what appears to be the trial court's findings of fact and conclusions of law, in which the court again stated that by relinquishing the vehicle to the insurance company and then "wash[ing] its hands," TMC "deprived [Flowers] of the opportunity to properly evaluate the loss."[21]

In a bailment claim, a trial court may in some circumstances award damages based on the value of the property at the time of delivery to the bailee.[22] We agree with the trial court that TMC's actions prevented Flowers from providing evidence of the value of the vehicle after it was damaged, and thus, the trial court correctly awarded damages based on the value of the vehicle at the time of delivery to TMC, and Flowers did not have to produce evidence of the vehicle's value after the damage occurred. We therefore overrule TMC's third issue.

---

[21]The trial court did not file its own findings of fact and conclusions of law, but the bottom of Flowers's proposed findings of fact and conclusions of law bears what appears to be the signature of the trial court.

[22]*See, e.g., Kirkland v. Mission Pipe & Supply Co.*, 182 S.W.2d 854, 855–56 (Tex. Civ. App.—1944, writ ref'd w.o.m.) (holding that the correct measure of damages to a pipe that was the subject of a bailment was its value at the time it was delivered to the appellant and not at the time of its conversion because appellant had agreed to return the pipe if he did not purchase it, a large part of the pipe had been lost by appellant's employees, and awarding the value of the pipe at the time of conversion would have allowed the appellee free use of the pipe without paying rental for it and would not have compensated the appellant for the wear and tear on the pipe).

9

TMC argues in its fourth and final issue that the trial court erred by granting judgment for attorney's fees when the evidence was legally and factually insufficient to support a breach of contract claim, there was a deemed admission negating the breach of contract claim, and TMC conclusively established its affirmative defense of impossibility of performance. We have already overruled these same arguments with respect to TMC's first three issues, and, accordingly, we also overrule them with respect to TMC's fourth issue.

In its reply brief, TMC argues that there was no basis for an award of attorney's fees where (1) Flowers failed to present his demand to TMC as required by section 38.002 of the civil practice and remedies code, and (2) Flowers failed to disclose in response to discovery requests the amount or method of calculating such fees as required by rule 194.2 of the Texas Rules of Civil Procedure.

Under the statutory provision authorizing recovery of attorney's fees for a breach of contract claim, the claimant must have presented the claim to the opposing party or to a duly authorized agent of the opposing party.[23] The purpose of the presentment requirement is to allow the person against whom the claim is asserted an opportunity to pay the claim within thirty days without

---

[23]Tex. Civ. Prac. & Rem. Code Ann. § 38.002 (West 2008); *Panizo v. Young Men's Christian Ass'n of Greater Houston Area*, 938 S.W.2d 163, 168 (Tex. App.—Houston [1st Dist.] 1996, no writ).

10

incurring an obligation for attorney's fees.[24]   To recover attorney's fees, the

plaintiff bears the burden of both pleading and proving presentment, but no

particular form of presentment is required.[25]

Flowers testified that he did not ask Carter to return his vehicle but that at

some point, he told his attorney to have "them" bring him the vehicle "if they don't

want to settle with" him and that "[i]f they don't want to pay [him] the value, bring

[him] the car."   When asked if that demand had been related to Cater "or his

representative," Flowers testified, "Not to my knowledge, but it was related to

him."   Flowers testimony does not establish to whom any demand for the vehicle

or a settlement was made or whether it had been made thirty days prior to trial or

judgment[26] and shows that Flowers had no personal knowledge of whether any

demand had been made.

---

[24]*Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981).

[25]*VingCard A.S. v. Merrimac Hospitality Sys., Inc.*, 59 S.W.3d 847, 867 (Tex. App.—Fort Worth 2001, pet. denied).

[26]*See* Tex. Civ. Prac. & Rem. Code Ann. § 38.002 (allowing a party thirty days after presentment to tender payment on a claim before attorney's fees may be recovered); *Bd. of County Comm'rs of County of Beaver Okla. v. Amarillo Hosp. Dist.*, 835 S.W.2d 115, 127 (Tex. App.—Amarillo 1992, no writ) (noting that some courts of appeals have held that presentment is sufficient if made thirty days prior to judgment, while others have held that presentment must be made thirty days prior to trial); *see also McDowell v. Bier*, No. 02-09-00231-CV, 2010 WL 1427244, at *6 (Tex. App.—Fort Worth Apr. 8, 2010) (mem. op.) (stating that presentment must be made "at least thirty days before *judgment*") (emphasis added); *Marifarms Oil & Gas, Inc. v. Westhoff*, 802 S.W.2d 123, 127 (Tex. App.—Fort Worth 1991, no writ) (holding that evidence of presentment was sufficient where the evidence showed that demand had been made in a deposition taken more than thirty days prior to *trial*).

11

Flowers's attorney, however, testified that she had made a demand on TMC's insurance company, and she asserted the same fact in a post-trial brief to the trial court. Section 38.002 allows presentment of a claim to a "duly authorized agent."[27] TMC argues that TMC never authorized an insurance agent to receive demands that *TMC* pay a claim and that the agent was only concerned with demands made to the insurance company for payment by the insurance company. The insurance contract between TMC and its insurer is not in the record, nor is any other evidence that the insurance policy covered the bailment contract claim presented by Flowers. But the insurance company acted as TMC's agent as far as compensating Flowers for damage caused by the drunk driver,[28] and no evidence shows that the agency relationship did not extend to covering TMC's damages that arose from TMC's breach of the bailment contract. We overrule this argument.

As for TMC's argument that the fees were not recoverable because Flowers did not disclose his attorney's fees under civil procedure rule 194.2(d),

---

[27]Tex. Civ. Prac. & Rem. Code Ann. § 38.002.

[28]*See Mandola v. Mariotti*, 557 S.W.2d 350, 352 (Tex. Civ. App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.) (stating that "[o]rdinarily the insurer is not an agent of the insured merely because it performs acts beneficial to the insured" but that, as to an indemnity insurer, the insurer "may, by retaining full control of actions against the insured, become the agent of the insured in taking action under such a reservation of authority"); *cf. Pattison v. Highway Ins. Underwriters*, 278 S.W.2d 207, 212 (Tex. Civ. App.—Galveston 1955, writ ref'd n.r.e.) (stating that the adjuster was not the agent of the insured and that "[t]he insured, not having any right to negotiate the settlement, cannot be held liable for the representation of the insurer's claims adjuster").

that rule requires disclosure of "the amount and any method of calculating economic damages."[29]   Attorney's fees are not economic damages and are therefore not required to be disclosed under rule 194.2(d).[30]   TMC does not complain about any failure by Flowers to disclose his attorney as a testifying expert on attorney's fees under rule 194.2(f).[31]   Accordingly, we overrule TMC's fourth issue.

Flowers argues in a crosspoint that although the trial court awarded him attorney's fees, he has incurred more attorney's fees for post-trial work and for work on this appeal.  He states that he requested an additional award for these fees in an amended affidavit of cost filed in the trial court and in his response to TMC's motion for new trial, and he contends that the trial court should have awarded him the fees.  As TMC points out, Flowers did not file a notice of appeal

---

[29]Tex. R. Civ. P. 194.2(d).

[30]*See Wilen v. Falkenstein*, 191 S.W.3d 791, 805 (Tex. App.—Fort Worth 2006, pet. denied) (citing general rule that attorney's fees cannot be recovered as damages); *Shook v. Walden*, 304 S.W.3d 910, 921 (Tex. App.—Austin 2010, no pet.) (holding that attorney's fees awarded under chapter 38 are not "economic damages"); *see also Southland Lloyds Ins. Co. v. Cantu*, No. 04-09-00705-CV, 2011 WL 1158244, at *13 n.7 (Tex. App.—San Antonio Mar. 30, 2011, no pet.); *Shafer v. Gulliver*, No. 14-09-00646-CV, 2010 WL 4545164, at *11 (Tex. App.—Houston [14th Dist.] Nov. 12, 2010, no pet.); *McCarthy v. Padre Beach Homes, Inc.*, No. 13-01-00846-CV, 2003 WL 22025858, at *4 (Tex. App.—Corpus Christi Aug. 29, 2003, no pet.) (mem. op.) ("[A]ttorney fees are not economic damages."); *Sec. State Bank v. Spinnler*, 55 S.W.2d 128, 129 (Tex. Civ. App.—Amarillo 1932, writ dism'd); *Heidemann v. Martinez*, 173 S.W. 1166, 1167 (Tex. Civ. App.—San Antonio 1915, no writ).

[31]*See* Tex. R. Civ. P. 194.2(f).

in this cause.  Because Flowers failed to file a notice of appeal, we decline to consider his crosspoint.[32]

Having overruled all of TMC's issues and Flowers's crosspoint, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

WALKER, J. concurs without opinion.

DELIVERED:  September 29, 2011

---

[32]*See* Tex. R. App. P. 25.1(b),(c).