02-10-226-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00226-CV

 

 


 
 
 Frankie P. Carter and TMC Auto Transport, Inc.
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 Mike Flowers
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM County
Court at Law No. 3 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Appellee
Mike Flowers purchased a 2000 Lincoln Town Car at an auction for the purpose of
reselling it at his business, a used car lot in New Mexico.  He hired Appellant
TMC Auto Transport, Inc., owned by Appellant Frankie P. Carter, to transport the
vehicle from an auction in Texas to New Mexico.

While
TMC’s trailer was stopped at a red light, a car struck the rear of the trailer,
moved up onto the trailer, and hit Flowers’s car.  The driver of this vehicle
was arrested for DWI.  

Flowers’s
car was damaged in the accident.  Upon instruction by an adjustor with TMC’s
insurance carrier, TMC dropped off the vehicle in the parking lot of the auto
auction, where the carrier had it picked up by a wrecker.  The insurance
carrier and Flowers engaged in negotiations over compensation.  Flowers
rejected the insurance carrier’s offers, and at some point the insurance
company sold the car at a salvage auction for $1,575.

Flowers
filed suit against TMC and Carter for breach of contract and breach of
warranty.  Flowers later amended his petition to add claims for breach of
mutual benefit bailment, conversion, negligence, and breach of duty of good
faith and fair dealing.

The
trial court denied TMC and Carter’s motion for summary judgment, and the case
was tried to the bench.  Flowers introduced evidence showing that the Bluebook
retail value of a 2000 Lincoln Town Car in excellent condition several months
after the accident was $13,150.  Flowers testified that he did not remember
what he paid for the car at the auction but gave a ballpark figure of “a little
over $10,000,” which he stated was less than retail but a little more than
wholesale.  Flowers also testified that from the pictures he saw, “[he] knew [the
car] was totaled” in the accident, but because he never saw the car after the
accident, he could not give an estimate as to its salvage value after the
accident.  TMC produced evidence that the highest bidder at the salvage auction
had bid $1,575.

The
trial court rendered judgment for Flowers on his breach of bailment contract
claim against TMC and awarded him $10,000 in actual damages and $11,910 in
attorney’s fees.  The court rendered a take nothing judgment on Flowers’s claim
against Carter and a judgment in favor of TMC on Flowers’s remaining claims.

In
its first issue, TMC argues that the trial court erred by granting judgment for
Flowers on his breach of bailment contract claim in the face of a deemed
admission stating that “Defendants did not breach any contract made the basis
of this lawsuit.”  TMC expressly waived this issue during oral argument before
this court, and we therefore do not consider it.

In
its second issue, TMC argues that the trial court erred by granting judgment for
Flowers on his breach of contract claim when TMC’s only legal duty was to
exercise an ordinary or reasonable degree of care in hauling Flowers’s vehicle,
and there was no evidence of any negligence on the part of TMC when its trailer
was hit from behind by an intoxicated driver.

“The
foundation of a bailment lies in contract.”[2]  A bailment contract may
be express or implied.[3]  In either case, for a
bailment to arise, the bailor must deliver personal property to the bailee for
a specific purpose, the bailee must accept delivery of the property, and the
parties must agree that the specific purpose will be realized and that the
property will be either returned to the bailor or dealt with according to the
bailor’s direction.[4]

The
bailment relationship is governed by principles of negligence.[5] 
That is, the bailment contract gives rise to a duty on the part of the bailee,
and, in the case of a bailment for mutual benefit of the parties,[6]
that duty is to take reasonable care in safekeeping the property that is the
subject matter of the bailment.[7] 
The bailee has an obligation to return the property to the bailor when the
purpose of the bailment has ended or to keep the property until the bailor
reclaims it.[8]

The
law does not provide a single, specific cause of action for a breach of a
bailment contract,[9] and a bailee who breaches
the duties arising from the bailment contract may be liable for breach of the
contract or for negligence in the performance of his or her duty arising from
the contract.[10]  In an action based on a
bailment for mutual benefit of the parties, once the bailor proves that the
property was not returned, a rebuttable presumption arises of negligence by the
bailee in the performance of his duties, establishing a prima facie case of
liability against the bailee.[11]

The
bailee is generally not liable, however, if the property subject to the
bailment has been injured by accident or by some other means that was entirely
not the bailee’s fault.[12]  And when the property is
delivered to a third party at the bailor’s direction, the bailee has no
liability for any subsequent loss or nondelivery of the bailed property.[13]

TMC
is correct that it is not liable for breach of the bailment contract based on the
damage to the vehicle caused by the drunk driver if TMC’s negligence did not
allow the accident to occur because, in that case, the damage to the vehicle
was not caused by TMC’s failure to take reasonable care of the vehicle.  And,
as Flowers admitted at trial, the accident was caused solely by the drunk driver.

But TMC
still had an obligation under the bailment contract to return the property to
Flowers, even in its altered state.[14]  It failed to do so. 
TMC could have avoided liability by proving that, through no fault of its own,
the vehicle had been damaged to such an extent that it could not be returned.[15] 
But TMC did not do so.  Nor did TMC establish that while in the insurance
company’s possession, the vehicle was destroyed or disappeared through no fault
of TMC or the insurance company.[16]  And TMC does not argue
that it delivered the vehicle to the insurance company at Flowers’s direction
or that Flowers’s consent to having the property delivered to the insurance
company created a subsequent bailment, and therefore TMC cannot escape
liability on this basis.[17]  Although Carter
testified that TMC did not have a wrecker that could move the damaged vehicle,
TMC did not establish that it was impossible to move the vehicle—in fact, the
evidence established that the vehicle was moved.  Carter acknowledged at trial
that he did not know what happened to Flowers’s vehicle.  TMC breached its duty
under the bailment contract, not when the drunk driver struck the vehicle, but
when it delivered the vehicle to a third party and then lost track of it.  We
overrule TMC’s second issue.

In
its third issue, TMC argues that the trial court erred by granting judgment on
Flowers’s breach of contract claim when TMC conclusively established its
affirmative defense of impossibility of performance.  Impossibility is a
defense to a breach of contract action,[18] and bailment contracts
are generally governed by the same rules that govern other contracts.[19]
 We agree with TMC that, due to circumstances beyond its control, it was
impossible for TMC to deliver the car to Flowers in the same condition as when
TMC took the car into its possession.  But TMC did not establish that it was
impossible for TMC to deliver the vehicle at all.

In
its reply brief, TMC argues that the trial court awarded Flowers the full value
of the undamaged vehicle even though it would have been impossible for TMC to
deliver to Flowers an undamaged vehicle.  A plaintiff usually has the burden of
proving every element of his claim, including damages.[20] 
Flowers offered evidence of the value of the vehicle prior to the accident but
did not provide any evidence of the value of the vehicle after it had been
damaged in the accident.  TMC produced some evidence of the vehicle’s value
after the accident, but only in the form of the bids at the salvage auction.  In
a letter to the parties, the trial court stated that TMC was not liable for the
damage to the vehicle caused by the accident but that TMC “to some extent,
deprived [Flowers] of the opportunity to evaluate the loss” by turning the
vehicle over to the insurance company “and wash[ing] its hands.”  The court
reiterated this conclusion in what appears to be the trial court’s findings of
fact and conclusions of law, in which the court again stated that by
relinquishing the vehicle to the insurance company and then “wash[ing] its
hands,” TMC “deprived [Flowers] of the opportunity to properly evaluate the
loss.”[21]

In a
bailment claim, a trial court may in some circumstances award damages based on
the value of the property at the time of delivery to the bailee.[22] 
We agree with the trial court that TMC’s actions prevented Flowers from
providing evidence of the value of the vehicle after it was damaged, and thus, the
trial court correctly awarded damages based on the value of the vehicle at the
time of delivery to TMC, and Flowers did not have to produce evidence of the vehicle’s
value after the damage occurred.  We therefore overrule TMC’s third issue.

TMC
argues in its fourth and final issue that the trial court erred by granting
judgment for attorney’s fees when the evidence was legally and factually
insufficient to support a breach of contract claim, there was a deemed
admission negating the breach of contract claim, and TMC conclusively
established its affirmative defense of impossibility of performance.  We have
already overruled these same arguments with respect to TMC’s first three issues,
and, accordingly, we also overrule them with respect to TMC’s fourth issue.

In
its reply brief, TMC argues that there was no basis for an award of attorney’s
fees where (1) Flowers failed to present his demand to TMC as required by
section 38.002 of the civil practice and remedies code, and (2) Flowers failed
to disclose in response to discovery requests the amount or method of
calculating such fees as required by rule 194.2 of the Texas Rules of Civil
Procedure.

Under
the statutory provision authorizing recovery of attorney’s fees for a breach of
contract claim, the claimant must have presented the claim to the opposing
party or to a duly authorized agent of the opposing party.[23] 
The purpose of the presentment requirement is to allow the person against whom
the claim is asserted an opportunity to pay the claim within thirty days
without incurring an obligation for attorney’s fees.[24]  To recover attorney’s fees, the
plaintiff bears the burden of both pleading and proving presentment, but no
particular form of presentment is required.[25]

Flowers
testified that he did not ask Carter to return his vehicle but that at some
point, he told his attorney to have “them” bring him the vehicle “if they don’t
want to settle with” him and that “[i]f they don’t want to pay [him] the value,
bring [him] the car.”  When asked if that demand had been related to Cater “or
his representative,” Flowers testified, “Not to my knowledge, but it was
related to him.”  Flowers testimony does not establish to whom any demand for
the vehicle or a settlement was made or whether it had been made thirty days
prior to trial or judgment[26]
and shows that Flowers had no personal knowledge of whether any demand had been
made.

Flowers’s
attorney, however, testified that she had made a demand on TMC’s insurance
company, and she asserted the same fact in a post-trial brief to the trial
court.  Section 38.002 allows presentment of a claim to a “duly authorized
agent.”[27]  TMC argues that TMC
never authorized an insurance agent to receive demands that TMC pay a
claim and that the agent was only concerned with demands made to the insurance
company for payment by the insurance company.  The insurance contract between
TMC and its insurer is not in the record, nor is any other evidence that the
insurance policy covered the bailment contract claim presented by Flowers.  But
the insurance company acted as TMC’s agent as far as compensating Flowers for
damage caused by the drunk driver,[28] and no evidence shows
that the agency relationship did not extend to covering TMC’s damages that
arose from TMC’s breach of the bailment contract.  We overrule this argument.

As
for TMC’s argument that the fees were not recoverable because Flowers did not
disclose his attorney’s fees under civil procedure rule 194.2(d), that rule
requires disclosure of “the amount and any method of calculating economic
damages.”[29]  Attorney’s fees are not
economic damages and are therefore not required to be disclosed under rule
194.2(d).[30]  TMC does not complain
about any failure by Flowers to disclose his attorney as a testifying expert on
attorney’s fees under rule 194.2(f).[31]  Accordingly, we
overrule TMC’s fourth issue.

Flowers
argues in a crosspoint that although the trial court
awarded him attorney’s fees, he has incurred more attorney’s fees for
post-trial work and for work on this appeal.  He states that he requested an
additional award for these fees in an amended affidavit of cost filed in the trial
court and in his response to TMC’s motion for new trial, and he contends that
the trial court should have awarded him the fees.  As TMC points out, Flowers
did not file a notice of appeal in this cause.  Because Flowers failed to file
a notice of appeal, we decline to consider his crosspoint.[32]

Having
overruled all of TMC’s issues and Flowers’s crosspoint, we affirm the trial
court’s judgment.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
DAUPHINOT, WALKER, and MCCOY, JJ.

 

WALKER,
J. concurs without opinion.

 

DELIVERED:  September 29,
2011









[1]See Tex. R. App. P. 47.4.





[2]Sanroc Co. Int’l v.
Roadrunner Transp., Inc., 596 S.W.2d 320, 322 (Tex. Civ. App.—Houston [1st
Dist.] 1980, no writ).





[3]State v. $281,420.00 in
U.S. Currency, 312 S.W.3d 547, 551 (Tex. 2010) (stating that to create a
bailment, there must be an express or implied contract between the parties); see
also Int’l Freight Forwarding, Inc. v. Am. Flange, 993 S.W.2d 262, 268
(Tex. App.—San Antonio 1999, no pet.) (noting that a bailment contract may
arise by implication of law).





[4]See $281,420.00 in U.S.
Currency, 312 S.W.3d at 551.





[5]Bank One, Tex., N.A. v.
Stewart, 967 S.W.2d 419, 432 (Tex. App.—Houston [14th Dist.] 1998, pet.
denied).





[6]Andrews v. Allen,
724 S.W.2d 893, 895–96 (Tex. App.—Austin 1987, no writ) (defining a bailment
for mutual benefit as one in which the bailment was created as an incident of a
business in which the bailee makes a profit).





[7]Trammell v. Whitlock,
150 Tex. 500, 504, 242 S.W.2d 157, 159 (1951); Ampco Auto Parks, Inc. v.
Williams, 517 S.W.2d 401, 403 (Tex. Civ. App.—Dallas 1974, writ ref’d
n.r.e.).





[8]English v. Dhane,
156 Tex. 231, 233, 294 S.W.2d 709, 711 (1956); Allright Auto Parks, Inc. v.
Moore, 560 S.W.2d 129, 130 (Tex. Civ. App.—San Antonio 1977, writ ref’d
n.r.e.); see also D & D Assocs., Inc. v. Sierra Plastics, Inc., 570
S.W.2d 205, 206 (Tex. Civ. App.—Waco 1978, no writ) (“[E]very bailment contract
contemplates return of the property bailed, either in the same or altered form,
or its delivery to a third person with the express or implied consent of the
bailor.”).





[9]W.E. Stephens Mfg. Co.
v. Goldberg, 225 S.W.3d 77, 81 (Tex. App.—El Paso 2005, pet. denied) (“A
bailment relationship does not create a specific cause of action but instead
allows the bailor to choose specific relief for breach of the bailment
contract, e.g., an action for breach of contract, or an action for conversion.”).





[10]Barker v. Eckman,
213 S.W.3d 306, 310 (Tex. 2006) (noting that claims for breaches of bailment
agreements generally can be brought as contract or tort claims); see also
Staley v. Colony Union Gin Co., 163 S.W. 381, 382 (Tex. Civ. App.—Amarillo
1914, no writ) (quoting Davis v. Hurt, 114 Ala. 146, 152, 21 S. 468, 469
(1897) for the proposition that an unexplained failure to deliver the bailed
property raises a presumption of negligence on the part of the bailee and may
give rise to liability for breach of the bailment contract or for negligence in
the performing the duty that arises from the contract).





[11]Buchanan v. Byrd,
519 S.W.2d 841, 843 (Tex. 1975); Sanroc Co. Int’l, 596 S.W.2d at 322.





[12]Whitlock v. Trammell,
237 S.W.2d 451, 453 (Tex. Civ. App.—Fort Worth), aff’d, 150 Tex. 500,
242 S.W.2d 157 (1951).





[13]Andrews, 724
S.W.2d at 899.





[14]See Sierra
Plastics, Inc., 570 S.W.2d at 206.





[15]See Whitlock, 237
S.W.2d at 453.





[16]See Barnett-Miron
Enters., Inc. v. Roneal Martin, Inc., 742 S.W.2d 530, 532 (Tex. App.—Fort
Worth 1987, no pet.) (holding that even if the bailee erred by delivering
property subject to a bailment to a third party, the bailee was not liable for
the property’s loss because it had been destroyed by a fire that was not caused
by the fault of the bailee or the third party).





[17]See Andrews, 724
S.W.2d at 899.





[18]Centex Corp. v. Dalton,
840 S.W.2d 952, 954 (Tex. 1992) (recognizing impossibility of performance as a
defense to a breach of contract action).





[19]Sanroc Co., 596
S.W.2d at 322.





[20]See Lakewood Pipe of
Tex., Inc. v. Conveying Techniques, Inc., 814 S.W.2d 553, 556 (Tex. App.—Houston
[1st Dist.] 1991, no writ).





[21]The trial court did not
file its own findings of fact and conclusions of law, but the bottom of
Flowers’s proposed findings of fact and conclusions of law bears what appears
to be the signature of the trial court.





[22]See, e.g., Kirkland v.
Mission Pipe & Supply Co., 182 S.W.2d 854, 855–56 (Tex. Civ. App.—1944,
writ ref’d w.o.m.) (holding that the correct measure of damages to a pipe that
was the subject of a bailment was its value at the time it was delivered to the
appellant and not at the time of its conversion because appellant had agreed to
return the pipe if he did not purchase it, a large part of the pipe had been
lost by appellant’s employees, and awarding the value of the pipe at the time
of conversion would have allowed the appellee free use of the pipe without
paying rental for it and would not have compensated the appellant for the wear
and tear on the pipe).





[23]Tex. Civ. Prac. &
Rem. Code Ann. § 38.002 (West 2008); Panizo v. Young Men’s Christian Ass’n
of Greater Houston Area, 938 S.W.2d 163, 168 (Tex. App.—Houston [1st Dist.]
1996, no writ).





[24]Jones v. Kelley,
614 S.W.2d 95, 100 (Tex. 1981).





[25]VingCard A.S. v.
Merrimac Hospitality Sys., Inc., 59 S.W.3d 847, 867 (Tex. App.—Fort Worth
2001, pet. denied).





[26]See Tex. Civ.
Prac. & Rem. Code Ann. § 38.002 (allowing a party thirty days after
presentment to tender payment on a claim before attorney’s fees may be
recovered); Bd. of County Comm’rs of County of Beaver Okla. v. Amarillo
Hosp. Dist., 835 S.W.2d 115, 127 (Tex. App.—Amarillo 1992, no writ) (noting
that some courts of appeals have held that presentment is sufficient if made
thirty days prior to judgment, while others have held that presentment must be
made thirty days prior to trial); see also McDowell v. Bier, No.
02-09-00231-CV, 2010 WL 1427244, at *6 (Tex. App.—Fort Worth Apr. 8, 2010)
(mem. op.) (stating that presentment must be made “at least thirty days before judgment”)
(emphasis added); Marifarms Oil & Gas, Inc. v. Westhoff, 802 S.W.2d
123, 127 (Tex. App.—Fort Worth 1991, no writ) (holding that evidence of
presentment was sufficient where the evidence showed that demand had been made
in a deposition taken more than thirty days prior to trial).





[27]Tex. Civ. Prac. &
Rem. Code Ann. § 38.002.





[28]See Mandola v.
Mariotti, 557 S.W.2d 350, 352 (Tex. Civ. App.—Houston [1st Dist.] 1977,
writ ref’d n.r.e.) (stating that “[o]rdinarily the insurer is not an agent of
the insured merely because it performs acts beneficial to the insured” but
that, as to an indemnity insurer, the insurer “may, by retaining full control
of actions against the insured, become the agent of the insured in taking
action under such a reservation of authority”); cf. Pattison v. Highway Ins.
Underwriters, 278 S.W.2d 207, 212 (Tex. Civ. App.—Galveston 1955, writ
ref’d n.r.e.) (stating that the adjuster was not the agent of the insured and
that “[t]he insured, not having any right to negotiate the settlement, cannot
be held liable for the representation of the insurer’s claims adjuster”).





[29]Tex. R. Civ. P. 194.2(d).





[30]See Wilen v.
Falkenstein, 191 S.W.3d 791, 805 (Tex. App.—Fort Worth 2006, pet. denied)
(citing general rule that attorney’s fees cannot be recovered as damages); Shook
v. Walden, 304 S.W.3d 910, 921 (Tex. App.—Austin 2010, no pet.) (holding
that attorney’s fees awarded under chapter 38 are not “economic damages”); see
also Southland Lloyds Ins. Co. v. Cantu, No. 04-09-00705-CV, 2011 WL
1158244, at *13 n.7 (Tex. App.—San Antonio Mar. 30, 2011, no pet.); Shafer
v. Gulliver, No. 14-09-00646-CV, 2010 WL 4545164, at *11 (Tex. App.—Houston
[14th Dist.] Nov. 12, 2010, no pet.); McCarthy v. Padre Beach Homes, Inc.,
No. 13-01-00846-CV, 2003 WL 22025858, at *4 (Tex. App.—Corpus Christi Aug. 29,
2003, no pet.) (mem. op.) (“[A]ttorney fees are not economic damages.”); Sec.
State Bank v. Spinnler, 55 S.W.2d 128, 129 (Tex. Civ. App.—Amarillo 1932,
writ dism’d); Heidemann v. Martinez, 173 S.W. 1166, 1167 (Tex. Civ.
App.—San Antonio 1915, no writ).





[31]See Tex. R. Civ.
P. 194.2(f).





[32]See Tex. R. App.
P. 25.1(b),(c).